Virginia TODD *v.* Michael PELOSO, Jr. and Roger LOGAN, Circuit Judge, on Exchange, of the Circuit Court of Baxter County, Arkansas

CA 84-370                                        680 S.W.2d 712

Court of Appeals of Arkansas
En Banc
Opinion delivered October 31, 1984

*William David Duke* and *Judith Strother,* for petitioner.

*Poynter, Huckaba & Gearhart,* by: *Van A. Gearhart,* for respondents.

PER CURIAM. Petitioner, Virginia Todd, has caused to be filed in this Court a Petition for Writ of Certiorari and Application for Stay of the Trial Court's Grant of Habeas Corpus Relief pending a decision on the merits in this Court.

Petitioner makes no allegations which, even if supported by the record, would compel a finding by this Court that the trial judge's refusal to stay its Writ of Habeas Corpus was in error.

The record presented to this Court by Petitioner demonstrates that the trial judge was in a better position to determine the best interests of the child than this Court.

Petition denied.

CRACRAFT, C.J., and COOPER, J., concur.

GLAZE, J., would grant the stay.

GEORGE K. CRACRAFT, Chief Judge, concurring. The majority of this court take the view that the issues of whether the Vermont court's determination that it had subject matter jurisdiction was incorrect, and whether the court had improperly interpreted the law of Vermont regarding the rights of putative fathers or there was an error in our own court rulings are not before us on the merits. These issues should not be addressed until the record is lodged here and the matter submitted on briefs and arguments. We addressed only the issue presented by the appellant's motion, i.e., whether the trial court abused its discretion in denying appellant's motion to stay the order returning custody of the minor to appellee during the pendency of the appeal. The trial court has the authority to fix the custody of minors during the pendency of an appeal and there is no absolute right to a supersedeas in child custody cases. Appellate courts do not interfere unless it appears that the trial court has manifestly abused its discretion. *Goodin v. Goodin,* 240 Ark. 541, 400 S.W.2d 665 (1966).

The courts in both Vermont and Arkansas have found that it would be in the best interest of the child that he be returned to the custody of his father. The Arkansas court has further held that it would be in his best interest to remain in his father's custody pending appeal. I see no abuse of discretion in that finding. Regardless of where the initial fault in this litigation lies, this child has resided with his father for at least the past three years. His initial contact with the State of Arkansas was four months prior to the entry of the trial court's order, when his mother absconded with him to Arkansas while her prayer for relief was pending in the Vermont court. The child's accustomed surroundings are in Vermont and his father is his accustomed custodian. There is no allegation that the father was not properly caring for the child or fostering his interest.

My opinion that the majority are correct is strengthened considerably by the data supplied us with appellee's response to the motion, which indicates that the motion presented us was filed on appellant's behalf *in absentia,* while appellant was secreting herself and the child in defiance of the court. Pursuant to Rule 3, Arkansas Rules of the Supreme Court and Court of Appeals, appellee attached to his response to the motion affidavits of a deputy sheriff of Baxter County and the principal of a Mountin Home elementary school. The deputy averred that when he attempted to execute the trial court's order he discovered that appellant had packed her belongings and left her home with the child upon learning of the court's order, and that he had been unable to discover their whereabouts. He further averred that an information charging her with the felony of interference with court-awarded custody had been filed but he had been unable to serve it on her for the same reason. A certified copy of the information was also attached to the motion. The school principal averred that the child had been absent from school for unexplained reasons since October 3, two weeks prior to the trial court's order. No counter affidavits have been filed in support of appellant's motion.

Absent some indication that the child's welfare is endangered by remaining with his father pending the

appeal, the motion, in my opinion, borders on the ludicrous. We have no assurances that appellant will abide by our mandate; on the contrary, we have a clear indication that she has no intention of doing so unless our opinion is favorable to her.

JAMES R. COOPER, Judge, concurring. Today, this Court has denied petitioner's request for a stay of the Baxter County Circuit Court's order granting Mr. Peloso's petition for habeas corpus. In so doing, we have affirmed the decision of the circuit judge not to stay his own order. After hearing the habeas corpus petition, and after being asked to stay this order granting that petition, the trial court specifically found that it would be in the best interest of the minor child that custody be immediately placed in Mr. Peloso. I can find nothing which indicates that the trial court erred in refusing to stay his own order, nor could the other members of this Court's majority. Apparently, my dissenting colleague cannot find anything which shows error on the part of the trial judge, since there is nothing in the dissenting opinion to so indicate. This opinion is written to clarify the factual and procedural history of this case, and to spell out my specific reasons for voting to deny the petitioner's request for a stay.

First, I must strongly disagree with Judge Glaze that the majority decision will "serve only to encourage kidnapping children." I do not understand, nor does the dissenting opinion explain, the basis for such an assertion. Actually, I think that granting the relief sought by the petitioner would more likely serve to encourage violation of lawful court orders.

Next, I must also take issue with the statement that the majority has acted precipitously without benefit of a complete record. True, we do not have a complete record in this case. We do not need a complete record to decide whether or not we should stay the trial court's order pending a decision on the merits of this case, nor should we be presently concerned with the merits of the case. We do have excellent briefs in this case prepared by both sides to this litigation, and the members of the Court stayed the trial judge's order to provide time to study those briefs.

The background of this case is somewhat complex. Seth, who is now eight years old, was born in Vermont to the petitioner, who was living with Mr. Peloso without benefit of matrimony. Two years later, petitioner moved to Missouri. Mr. Peloso soon followed, and during the next two to three years, the petitioner and Mr. Peloso cooperated with each other with regard to Seth, with Mr. Peloso providing child support and the petitioner providing Mr. Peloso with adequate visitation. In 1981, Mr. Peloso took Seth to Vermont, and shortly thereafter, he initiated a petition for custody of Seth. Mr. Peloso was successful, but, on June 8, 1984, the Vermont Supreme Court overturned the lower court decision awarding Mr. Peloso custody of Seth. The Court found that, at the time Mr. Peloso filed his custody petition, Vermont could not exercise jurisdiciton because

> Vermont was not the child's home state at the time of the commencement of the proceeding nor within six months prior thereto, see § 1-31(5), and no parent or person acting as a parent continued to live in Vermont after the defendant and the child left the state in 1978. Neither the child nor the plaintiff had a significant connection with Vermont, since both had been absent from the state, other than for periodic, temporary visits, for three years.

*Peloso* v. *Botkin,* ___ Vt. ___, 479 A.2d 156 (1984).

Three days after the Vermont Supreme Court decision, Ms. Todd filed a petition seeking custody of Seth in Baxter Chancery Court, and she received an *ex parte* order granting her custody of Seth. That order was presented to the courts in Vermont, and, on June 12, 1984, Ms. Todd applied to the Vermont courts for a writ of habeas corpus. On June 15, 1984, Ms. Todd appeared before the Vermont court, and she was awarded visitation with her son. She signed the margin of the order acknowledging that she had received a copy of it. The order clearly prohibits removal of the child from the state of Vermont. On that same day the petitioner made arrangements to remove Seth from Vermont, an act which was completed on the next day in an airplane chartered by

the petitioner. On June 19, 1984, Mr. Peloso filed a petition in Vermont seeking custody of Seth. Ms. Todd also initiated an action in Baxter County Court, but that action was commenced after she had initiated her habeas corpus action in Vermont, and after Mr. Peloso initiated his custody action in Vermont. The Baxter County Chancery Court action was dismissed for want of subject matter jurisdiction on July 29, 1984.

The Baxter County Circuit Court, mindful of all these legal maneuvers, found that the Baxter County Court order, which was entered July 20, 1984, was not enforceable on the record before the Circuit Court, first because Mr. Peloso was not given proper notice of the pendency of that action, and second, because other custody actions were pending in Vermont. The trial court specifically found that the petitioner's habeas corpus petition was pending in Vermont before the Baxter County court action, and that the Vermont action was proceeding with notice and personal appearance of all parties, and that action was proceeding in substantial conformity with the Arkansas Uniform Child Custody Act. Further, the trial court found that Mr. Peloso's custody action in Vermont commenced July 19, 1984, was proceeding in conformity with the Arkansas Uniform Child Custody Act.

Having attempted to summarize the proceedings thus far, the situation is now this: the petitioner removed Seth from school on October 3, 1984, and is now apparently concealing him; she is a fugitive from justice, since felony interference with custody charges are pending against her in Baxter County (Judge Glaze states that this is an erroneous statement, but I am at a loss to understand that statement, since a certified copy of the felony information and bench warrant has been provided to all members of this Court, and, also attached is an affidavit from a Baxter County Criminal Investigator stating that he had tried to serve the custody order and warrant on the petitioner, but that his information was that she was in hiding); she has possession of Seth in violation of court order issued in Vermont and in Arkansas, and she had notice of those orders; two actions are pending in Vermont, one initiated by the petitioner herself,

and the other initiated by Mr. Peloso; and the Arkansas trial court has granted a habeas corpus petition which effectively returns jurisdiction of the matter to the Vermont courts. In the face of the factual history of this case, it seems to me that to grant any relief to the petitioner, in the form of a stay pending a hearing before this Court on the merits, would obviously reward her flagrant disregard of the orders of courts of competent jurisdiction in this State and in Vermont. Since there is not one scintilla of evidence, nor even a convincing argument, present before us that supports the argument that Seth's best interest requires a stay, this Court should not grant one.

Judge Glaze also makes much of the fact that Mr. Peloso took Seth to Vermont from Missouri, even to the extent of characterizing it as "stealing" him away. However, even if I were to agree that such action was improper, Mr. Peloso violated no court order, and his misconduct, if such it was, pales in comparison to the flagrant, deliberate, and continued disregard of court orders which, at least in part, are the result of litigation initiated by the petitioner.

The discussion of paternity in the dissenting opinion is interesting, but I fail to see what it really has to do with the question of whether we should stay the circuit judge's order pending a decision on the merits of this case. Neither the two Vermont trial courts which have had this matter before them, nor, apparently, the Vermont Supreme Court, and certainly not the Baxter County Circuit Court, have found the paternity issue to be a stumbling block to finding what is in Seth's best interest, and I do not find it to be a stumbling block. Petitioner makes reference to Mr. Peloso's lack of standing to seek custody, but I submit the proper forum for that issue is Vermont, where petitioner instituted her habeas corpus action, and where Mr. Peloso's action for custody is pending. Lest there be any question about it, no one alleges that Mr. Peloso is not Seth's natural father, though it apparently is true that legal proceedings to establish that fact have not taken place.

TOM GLAZE, Judge, dissenting. I would grant the petitioner's stay and request for certiorari. Apparently, I struck a nerve in writing this dissent since Judges Cooper

and Cracraft have belatedly and subsequently decided to write concurrences. I need only say, in response, that both my colleagues simply avoid the primary point of my dissent — that this Court ruled in this appeal without a complete record. As a consequence, the parties' petition, response and accompanying briefs are replete with affidavits and other hearsay attachments in order to make a record. In sum, both concurrences are based upon rank hearsay affidavits when a full record could have been had before deciding this case. I submit that this Court's taking such precipitous action gives rise to erroneous statements like that which appears in Judge Cooper's concurring opinion (and with which Judge Cracraft apparently agrees), *i.e.,* "she [petitioner] is a fugitive from justice, since felony interference with custody charges are pending against her in Baxter County." Not only is such statement not based on the record, it also serves to find the petitioner guilty of an allegation before she has had any opportunity to be heard. There is nothing in the incomplete record before us — including the deputy sheriff's hearsay-on-hearsay affidavit upon which Judges Cooper's and Cracraft's conclusion is based — that shows the petitioner possessed any knowledge that a criminal charge was pending against her. To impute such knowledge to the petitioner is sheer speculation and to conclude the petitioner is a fugitive is indulging in loose, legal thinking and clearly wrong. While I disagree with other assertions set forth in the concurring opinions, I note only that such differences can easily arise between members of the Court when the Court fails to require a complete record before ruling on issues presented to it on review.

This Court's action serves only to encourage kidnapping children, not to diminish it. In essence, it encourages putative fathers to steal children and forces the mothers — like petitioner — to go wherever the absconding putative father lights in order to regain custody of her child. In most cases, these mothers are persons who can least afford to pursue the litigation necessary to recover their children. Petitioner's son, Seth, is now *eight years old, but the* respondent *putative father has never taken any action to legitimate him.* Nonetheless, this Court's ruling, made without a complete record submitted by the parties, permits

the respondent to take physical custody of the child and to return him to Vermont. Over three years ago, the respondent stole Seth from the petitioner when she and her son lived in Missouri. Petitioner has spent the past three years in Vermont's courts trying to regain the custody of her son. The Vermont Supreme Court only recently declared that the State had no jurisdiction to grant the respondent custody of Seth under their U.C.C.J.A. *Peloso* v. *Botkin,* ___ Vt. ___, 479 A.2d 156 (1984). Not discouraged, respondent filed a new action in Vermont, thus forcing petitioner to continue her attempts to regain custody of Seth in Vermont even though that State's highest court held jurisdiction did not lie there.

Obviously, the respondent is depending upon his and Seth's three year presence in Vermont awaiting a final court decision as being sufficient contacts to give Vermont jurisdiction. In other words, respondent whisked Seth from his mother in Missouri, went to Vermont, obtained a court order granting him legal custody of Seth which was ultimately set aside by Vermont's Supreme Court, and this Court now says she must continue a legal fight for Seth's custody in Vermont — *even though it was respondent's misconduct that started the proceedings in that State in the first place.*

This Court's ruling, I submit, is countenanced solely on the fact that the petitioner violated a Vermont court's order — which was entered in respondent's new action filed after the Vermont Supreme Court's decision holding that State had no jurisdiction. Our Court ignores respondent's earlier misconduct of stealing Seth away to Vermont and his present attempt to use the past three years to bootstrap himself into the jurisdiction of Vermont.

If respondent had ever made an effort to legitimate Seth, my view of this unfortunate — almost tragic — situation might be different. I might also add that the respondent has not attempted to adopt Seth. Any legal obligation respondent owes Seth is tenuous even if the Vermont court grants him legal custody.

What has taken place so far has simply not been consistent with my understanding of the law. For example,

it is well established that the mother's right to custody of an illegitimate child is superior, and the father's right, if any exists, is secondary. *See* Annot., 98 A.L.R.2d 417, 427, 431 (1964), and Annot., 45 A.L.R.3d 216 (1972). This rule was adopted by the courts in both Arkansas and Vermont in the early 1900s. *See Waldron* v. *Childers,* 104 Ark. 206, 148 S.W. 1030 (1912); *Lipsey* v. *Battle,* 80 Ark. 287, 97 S.W. 49 (1906); and *Ex parte Byron,* 83 Vt. 108, 74 A. 488 (1909). In Arkansas, a putative father has virtually no defined statutory rights regarding his minor child unless that father takes some action to legitimate his child. *See* Ark. Stat. Ann. §§ 56-206(a)(2) (Supp. 1983), and 34-715 to -718 (Supp. 1983). In addition, I can find no cases either in Arkansas or Vermont in which a *putative* father gained legal custody of a child under the Uniform Child Custody Jurisdiction Act before he established his parentage with the child. From my quick review of the countless numbers of cases from other states, I am aware of one jurisdiction where a state permitted a putative father to obtain custody of his putative child under the Uniform Custody Act. I must admit that my independent research may be somewhat lacking since limited briefs have been submitted and the Court has chosen to decide this matter on short notice. Nevertheless, I believe the State has a rational basis upon which it can treat putative fathers differently than those fathers who have separated from or divorced the mothers and who no longer live with their children. *Lehr* v. *Robertson,* 103 S.Ct. 2985 (1983). Clearly, Arkansas law provides that a putative father may request custody of his child *provided* he has established paternity in a court of competent jurisdiction. Ark. Stat. Ann. § 34-718 (Supp. 1983). Even if Vermont's laws should allow respondent to proceed under its Uniform Custody Act, Arkansas, as a matter of public policy, need not defer to that court's jurisdiction or law in light of our own.[1]

---

[1]Vermont recently passed legislation effective May 14, 1984, that among other things, would permit the respondent to establish his parentage to Seth; that law provides it is the policy of Vermont that the legal rights, privileges, duties and obligations of parents be established for the benefit of all children, regardless of whether the child is born during marriage or out of wedlock. *See* Vt. Stat. Ann. T. 15 § 301 *et seq* (1984). From the record before us, respondent has not made any effort to proceed under Vermont's new parentage law. Instead, he merely seeks custody without any effort to establish those legal rights to which Seth would be entitled under that new law.

In sum, I believe this Court should have, at the minimum, afforded the petitioner and respondent the opportunity, after a complete and correct record was made, to fully brief and argue this cause before simply deferring to Vermont's jurisdiction — especially since respondent through his own misconduct and surreptitious acts has caused this matter to be lodged in Vermont's courts for *over three years.* I in no way condone petitioner's act in violating Vermont's court order by bringing Seth to Arkansas. There are legal penalties she may incur if she is found in contempt of that court's order; *but she should not be punished by taking away her son.* Such punishment is administered this mother by this Court's decision, and it is in no way ameliorated, by attempting to justify this Court's action on hearsay affidavits when the Court could have, at the very least, waited to decide this case when a full record was lodged.

Although I strenuously disagree with the majority, I have every confidence that the Vermont courts will be guided by the paramount issue concerning the best welfare and interest of Seth. On this point, Seth was in his mother's sole custody until respondent took him to Vermont three years ago. As noted earlier, Seth is now eight years old. It seems to me that if respondent had any genuine interest in Seth's welfare, he would have acted before now to have made him legitimate — a requirement Arkansas' law imposes before a putative father can request custody.