### Michael R. Peloso, Jr. v. Virginia C. Botkin a/k/a Virginia C. Bonagiano

[479 A.2d 156]

No. 83-253

Present: Billings, C.J., Hill, Underwood and Peck, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed June 8, 1984

*Bruce M. Lawlor,* Springfield, for Plaintiff-Appellee.

*Plante, Richards, Terino & Hanley,* White River Junction, for Defendant-Appellant.

**Billings, C.J.** The defendant, Virginia Botkin, appeals an order of the Bennington Superior Court awarding custody of the parties' son to the plaintiff. Although the defendant raises several issues on appeal, we need only address the first one, as it is dispositive of the matter. The first issue raised by defendant is whether, under the Uniform Child Custody Jurisdiction Act, 15 V.S.A. §§ 1031–1051 (UCCJA), the court had subject matter jurisdiction over the plaintiff's custody petition. See *Sholty* v. *Carruth,* 126 Ariz. 458, 459, 616 P.2d 918, 919 (1980) (uniform act covers subject matter jurisdiction, not jurisdiction over the parties). If the court lacked subject matter jurisdiction, its order awarding custody to the plaintiff is without force of law. *Suitor* v. *Suitor,* 137 Vt. 110, 111, 400 A.2d 999, 1000 (1979).

Between 1974 and 1977, the plaintiff and the defendant lived together, unmarried, in Mt. Holly, Vermont. In 1976, the defendant gave birth to their son, the subject of this custody dispute. In 1978, the family moved to Chester, Vermont. In July, 1978, without informing the plaintiff, the defendant took their son, and her daughter by an earlier marriage, and moved to her parents' home in Missouri. The plaintiff, after

locating the defendant and his son, went to Missouri. While there, the plaintiff talked with an attorney about the prospect of obtaining custody of his son. Apparently as a result of those discussions, and in order to be nearer his son, the plaintiff decided to move to Missouri. In October, 1978, the plaintiff moved to a rented house in Festus, Missouri, and started work with an engineering firm in St. Louis.

For the next three years, the plaintiff and the defendant worked out an amicable arrangement respecting their son; the plaintiff paid $150 a month support and enjoyed generous visitation with his son. At all times the child resided with his mother. Sometime in the latter part of April, 1981, the plaintiff informed the defendant that he wished to take their son to Vermont for a two week vacation. Shortly after he and the boy arrived in Vermont, the plaintiff filed his petition for custody.

Under the UCCJA, a Vermont court may invoke jurisdiction to determine child custody when:

(1) this state

(A) is the home state of the child at the time of commencement of the proceeding, or

(B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(2) it is in the best interest of the child that a court of this state assume jurisdiction because

(A) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and

(B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) the child is physically present in this state and

(A) the child has been abandoned or

. (B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected, or

(4) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with divisions (1), (2), or (3) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

15 V.S.A. § 1032(a) (1)–(4).

▮ The court below denied defendant's motion to dismiss for lack of jurisdiction. The court ruled that it was in the child's best interest for the court to assume jurisdiction because the child and his father, the plaintiff, had a significant connection with Vermont and substantial evidence concerning the child's present or future care, protection, training and personal relationships was available in Vermont. 15 V.S.A. § 1032(a)(2). On the record before us, however, this was error. The criteria supporting jurisdiction under the UCCJA must be present at the time of the initiation of the particular custody proceeding, *Gomez* v. *Gomez,* 86 A.D.2d 594, 595, 446 N.Y.S.2d 127, 129 (1982); *Vanneck* v. *Vanneck,* 49 N.Y.2d 602, 608–09, 404 N.E.2d 1278, 1281, 427 N.Y.S.2d 735, 738 (1980); see *French* v. *French,* 128 Vt. 138, 139, 259 A.2d 778, 779 (1969), and whatever occurs after that time is irrelevant to the initial inquiry into jurisdiction. *Gomez* v. *Gomez, supra,* 86 A.D.2d at 595, 446 N.Y.S.2d at 129.

▮ At the time of the commencement of plaintiff's custody petition, May 1, 1981, Vermont "could not have assumed jurisdiction in this case under any of the criteria listed in § 1032." *Boisvert* v. *Boisvert,* 143 Vt. 445, 448, 466 A.2d 1184, 1186 (1983). Vermont was not the child's home state at the time of the commencement of the proceeding nor within six months prior thereto, see § 1031(5), and no parent or person acting as a parent continued to live in Vermont after the defendant and the child left the state in 1978. Neither the child nor the plaintiff had a significant connection with Ver-

mont, since both had been absent from the state, other than for periodic, temporary visits, for three years. *Hegler v. Hegler*, 383 So. 2d 1134, 1136–37 (Fla. Dist. Ct. App. 1980); *Slidell v. Valentine*, 298 N.W.2d 599, 604 (Iowa 1980); see Commissioners' Notes, Uniform Child Custody Jurisdiction Act § 3, 9 U.L.A. 124 (1979) (significant state connection requires "maximum rather than minimum contact with the state."). The Vermont court was not the forum where substantial evidence concerning the child's emotional, physical, and social well-being was readily available. *Olsen v. Olsen*, 98 N.M. 644, 647, 651 P.2d 1288, 1291 (1982); see Commissioners' Notes, Uniform Child Custody Jurisdiction Act § 3, *supra*, 9 U.L.A. at 124 (interest of child best served when forum has *"optimum access* to relevant evidence.") (emphasis added). Although the child was physically present in Vermont, he had not been abandoned. Nor was there any need for emergency protection of the child; the trial court found that the child was cared for and loved by both his father and his mother. It could not have appeared to the court that no other state would have jurisdiction under the criteria listed under divisions (1), (2) or (3) since, had an action been instituted in Missouri, Missouri would have had jurisdiction under all three of those divisions. Nor had Missouri declined to exercise jurisdiction. Lastly, it was not in the best interest of the child for the court to assume jurisdiction. Such assumption was contrary to two of the stated purposes of the UCCJA: to promote cooperation with the courts of other states so that a custody decree is rendered in the state that can best decide the case in the interest of the child and to decline the exercise of jurisdiction when the child and his or her family have a closer connection with another state. 15 V.S.A. § 1031, note.

*Reversed; cause dismissed for lack of jurisdiction.*