## Kenneth Duval v. Michelle Duval

[546 A.2d 1357]

Nos. 86-508 and 87-407

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed April 8, 1988

*Robert C. Jackson*, South Royalton, for Plaintiff-Appellee.

*Ellen R. Andrews*, Barre, for Defendant-Appellant.

**Gibson, J.** These cases arise from a divorce proceeding and a concurrent child custody proceeding. Through her interlocutory appeal, defendant questions the trial court's jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), 15 V.S.A. §§ 1031-1051, to award temporary custody of the parties' child to plaintiff. On direct appeal from the court's final order, defendant reiterates the jurisdictional issue under the UCCJA and challenges the court's jurisdiction over the divorce proceeding. She also alleges that the trial court abused its discretion in fashioning the final order. We reverse and remand for a determination of the residency of the plaintiff at the time he filed his divorce complaint, and for a determination of jurisdiction pursuant to the procedures set forth in the UCCJA.

## I. FACTS

Both plaintiff and defendant were born and raised in Vermont; their son was born in Randolph, Vermont in July of 1980. During the course of their marriage, the couple experienced marital diffi-

culties. In February of 1985, plaintiff left the state and moved to Georgia where he obtained employment with his brother's firm. The following month, defendant and their son joined plaintiff in Georgia, and defendant also obtained employment with plaintiff's brother's firm. The reason the parties left Vermont was to get away from "bad influences" affecting their marriage. The marriage apparently improved for a short period of time, but then again started to deteriorate. Things came to a head on July 28, 1986, when the couple separated and defendant left the marital home, leaving the child with plaintiff. On August 4, 1986, plaintiff returned to Vermont with the child. The same day, defendant consulted an attorney in Georgia seeking a divorce from plaintiff and custody of their son. Defendant signed a verification of information for the divorce with her attorney that day, but the action was not filed in the Gwinnett County Superior Court in Georgia until August 22, 1986. Meanwhile, plaintiff contacted a Vermont attorney and filed a divorce action in Orange Superior Court on August 5, 1986, one day after he had returned to Vermont. Since then, plaintiff has continued to reside in Vermont while defendant has continued to reside in Georgia.

At a preliminary hearing to determine temporary custody of the child, defendant moved to dismiss for lack of jurisdiction of the Vermont court to hear this case under Vermont's version of the UCCJA, 15 V.S.A. §§ 1031-1051. The trial court took testimony on this issue and assumed jurisdiction pursuant to 15 V.S.A. § 1032(a)(2), despite clear evidence that Georgia possessed "home state" jurisdiction.[1] Defendant then moved to have the court certify the jurisdictional question for review by this Court pursuant to V.R.A.P. 5(b). The trial court denied defendant's request; however, this Court subsequently granted defendant's motion for an interlocutory appeal.

Upon stipulation of the parties, the case was returned to the trial court for a final hearing held on February 19, 1987. The court issued its final order on July 24, 1987, granting the parties a divorce, approving the parties' property distribution agreement, granting custody of the child to plaintiff, requiring defendant to pay twenty-five dollars per week in child support, and allowing a

---

[1] "Home state" is defined in 15 V.S.A. § 1031(5) as the state where the child lived with one or both parents for at least six consecutive months immediately preceding the initiation of the custody proceeding.

minimum of one weekend a month visitation to the defendant, with any other visitation to be arranged at the convenience of the plaintiff. Defendant appealed the final judgment, questioning the court's jurisdiction to entertain the divorce action on the ground that plaintiff did not meet the residency requirements of 15 V.S.A. § 592; reiterating the UCCJA jurisdictional issue previously raised in the interlocutory appeal; and alleging certain abuses of discretion by the trial court in fashioning its final order. The appeal of the final order was consolidated with the interlocutory appeal for argument before this Court.

## II. JURISDICTION UNDER 15 V.S.A. § 592.

15 V.S.A. § 592 provides that:

> A libel for divorce . . . may be brought if either party to the marriage has resided within the state for a period of six months or more, but a divorce shall not be decreed for any cause, unless the libelant or the libelee has resided in the state one year next preceding the date of final hearing. Temporary absence from the state because of illness, employment without the state, service as a member of the armed forces of the United States, or other legitimate and bona fide cause, shall not affect the six months' period or the one year period specified in the preceding sentence, provided the person has otherwise retained residence in this state.

Residency, for purposes of divorce jurisdiction, is more than mere presence within the state. The concept of residency in a divorce proceeding is encompassed within the legal definition of domicile: an "abode *animo manendi,* a place where a person lives or has his home, to which, when absent, he intends to return and from which he has no present purpose to depart." *Tower* v. *Tower,* 120 Vt. 213, 221, 138 A.2d 602, 607 (1958). In order to effectuate a change in domicile, there must be a relocation to the new residence and continued dwelling there, coupled with an intention of remaining there indefinitely; neither physical presence alone nor intention alone is sufficient to effectuate a change of domicile. *Walker* v. *Walker,* 124 Vt. 172, 174, 200 A.2d 267, 269 (1964). Unfortunately, "[t]he troublesome aspect of domicile is that it deals not only with acts, but with states of mind." *Id.* See also *Bonneau* v. *Russell,* 117 Vt. 134, 137, 85 A.2d 569, 571 (1952)

(necessary intent to establish domicile may be proven by acts as well as words).

Domicile is a question of fact to be determined in the first instance by the trial court, which has the best vantage from which to weigh the evidence and examine the demeanor of the witnesses. See *Town of Georgia* v. *Town of Waterville*, 107 Vt. 347, 350, 178 A. 893, 894 (1935); see also *Davidson* v. *Davidson*, 111 Vt. 24, 28, 9 A.2d 114, 116 (1939) (trial courts and not this Court are clearly the proper forum for determining questions of fact concerning divorce actions). On appeal, this Court will not set aside findings of fact unless they are clearly erroneous. V.R.C.P. 52(a). Cf. *Emmons* v. *Emmons*, 141 Vt. 508, 511, 450 A.2d 1113, 1115 (1982) (This Court will not disturb property distribution in a divorce decree if a reasonable evidentiary basis exists to support the trial court's findings.).

In the instant case, there is no dispute as to the actions relating to plaintiff's domicile; however, there is considerable dispute as to the meaning of plaintiff's actions, statements and, most importantly, his intentions. Plaintiff lived in Georgia for a period of approximately eighteen months. He received a Georgia driver's license, signed a long-term lease for a home there, and received long-term employment with his brother's firm in Georgia. He asserts, however, that he never gave up his residency in Vermont, and only moved to Georgia in an unsuccessful attempt to save his failing marriage. Once the parties separated permanently, he immediately returned to Vermont. Plaintiff claims that he fits within the requirements of 15 V.S.A. § 592, because he was only temporarily absent from the state for a "legitimate and bona fide cause," i.e., to save the marriage and to find employment in a new field.

Defendant takes a different view of the same facts. Defendant asserts that when plaintiff returned to Vermont on August 4, 1986, he did not fall within the prerequisites of the temporary absence exceptions of 15 V.S.A. § 592, because he had not "otherwise retained residence in this state." Plaintiff had no physical place to which to return that he could call home, other than the homes of his various relatives. Defendant also attacks plaintiff's contention that he never intended to give up his Vermont residency while living in Georgia. Defendant points to the facts that plaintiff obtained a Georgia driver's license and did other affirmative acts to show that he was relinquishing his Vermont residency

and accepting a Georgia residency. Furthermore, defendant questions plaintiff's claims of intent to retain his Vermont residency. On cross-examination, plaintiff admitted that if the marriage had indeed improved, he would have remained indefinitely in Georgia.

The abandonment of plaintiff's residence in Georgia, in and of itself, is insufficient to revive plaintiff's domicile in Vermont. See *Dailey* v. *Town of Ludlow*, 102 Vt. 312, 317, 147 A. 771, 773 (1929). Plaintiff admitted he was himself unsure of the location of his domicile: in his mind it would be Georgia if the marriage worked out, Vermont if it failed. Thus, there is an open question as to whether plaintiff possessed an "essential ingredient" in acquiring a new domicile in Georgia: an intention "to give up the old domicile" in Vermont. *Walker*, 124 Vt. at 174, 200 A.2d at 269. "If [a person] actually went to another [state] with an intention . . . of remaining there for an indefinite time as a fixed place of abode, a change of residence [to that state] was effective though he entertained a nebulous or floating intention of returning at some future time." *Town of Georgia*, 107 Vt. at 352, 178 A. at 895.

Unfortunately, the trial court never delineated its rationale for assuming jurisdiction in this questionable situation. It merely asserted in its temporary order that "[t]he Court assumes jurisdiction" of the case. In its final order, the court stated that "[f]or the reasons stated in the Court's previous order, this Court has jurisdiction of the action."

We have previously stated that trial courts should make findings of fact essential to the disposition of the case. See *Mayer* v. *Mayer*, 144 Vt. 214, 217, 475 A.2d 238, 240 (1984). Without dispositive findings, "[w]e are left to speculate as to the basis upon which the trial court made its findings and reached its decision. This we will not do." *Jensen* v. *Jensen*, 139 Vt. 551, 553, 433 A.2d 258, 260 (1981). Therefore, we reverse and remand this matter to the trial court for further hearings, consistent with the law of domicile, to determine whether plaintiff had met the jurisdictional prerequisites of 15 V.S.A. § 592 at the time of his filing for divorce.

## III. UCCJA

### A. Jurisdiction pursuant to 15 V.S.A. § 1032

■ Jurisdiction over a UCCJA proceeding rests on a different foundation from the residency requirements in a divorce proceeding. Defendant has consistently maintained that the trial court lacked jurisdiction to entertain the custody issue pursuant to 15 V.S.A. § 1032.[2] The statute contains a list of grounds under which this state can assume jurisdiction over a custody matter. Defendant argues that the grounds are listed in order of preference, with utmost preference accorded to the child's "home state," 15 V.S.A. § 1032(a)(1), and secondary consideration given to the "best interest of the child," 15 V.S.A. § 1032(a)(2). Under defendant's theory, a court would consider the "best interest of the child" only when "home state" jurisdiction was unavailable in any reasonable forum. According to defendant, Georgia should have primary jurisdiction, because it was the home state of the child immediately before plaintiff filed for divorce and custody; the Vermont court would obtain jurisdiction, under the "best interest of the child" test, only if the Georgia court declined to exercise its jurisdiction.

[2] 15 V.S.A. § 1032 states in pertinent part:

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state

(A) is the home state of the child at the time of the commencement of the proceeding, or

(B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(2) it is in the best interest of the child that a court of this state assume jurisdiction because

(A) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and

(B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; . . . .

. . . .

(b) Physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state . . . .

This Court recently refused to follow this approach in determining jurisdiction under the UCCJA. In *Meyer* v. *Meyer*, 148 Vt. 65, 528 A.2d 749 (1987), we stated that the "UCCJA contemplated alternate grounds for subject matter jurisdiction. No preference for one over the other exists." *Id.* at 67, 528 A.2d at 751 (citation omitted). See also Commissioners' Note, UCCJA § 3, 9 U.L.A. 111, 123 (1979) (subsections (a)(1) and (a)(2) referred to as "alternative" tests). *Meyer* is in accord with the interpretations of this uniform law section by the majority of other jurisdictions. See, e.g., *E.E.B.* v. *D.A.*, 89 N.J. 595, 610, 446 A.2d 871, 879 (1982), *cert. denied*, 459 U.S. 1210 (1983). But see, e.g., *Clarke* v. *Clarke*, 126 N.H. 753, 758, 496 A.2d 361, 364-65 (1985) (affirming dismissal of motion to modify existing custody order of New York court on basis that New York still retained jurisdiction and thus was the preferred jurisdiction under the UCCJA). See generally Comment, *The UCCJA: Coming of Age*, 34 Mercer L. Rev. 861, 871-88 (1983) (jurisdictional analysis under the UCCJA).

In assuming jurisdiction pursuant to 15 V.S.A. § 1032(a)(2), the trial court focused almost exclusively on the circumstances of the plaintiff and the child following their return to Vermont, and made no analysis of the competing claims of Georgia as the child's "home state" or as the proper forum based on the child's "best interest." As we noted in *Peloso* v. *Botkin*, 144 Vt. 461, 464, 479 A.2d 156, 158 (1984), the criteria supporting jurisdiction under the UCCJA must be present at the time of the initiation of the proceeding, and whatever occurs after that time is irrelevant to the initial inquiry into jurisdiction. In its findings of fact and conclusions of law in the temporary order, the trial court briefly alluded to the availability of evidence in this state concerning the child's emotional, physical, and social well-being, as well as the child's and the plaintiff's significant connections with this state. We hold these findings to be inadequate and so insufficient as to leave us to speculate as to the basis of the trial court's decision, something we refuse to do. *Jensen*, 139 Vt. at 553, 433 A.2d at 260; see also *Mayer*, 144 Vt. at 217, 475 A.2d at 240 (trial courts should make findings essential to the disposition of the case). Therefore, we remand to the trial court for a determination of its jurisdiction over this proceeding pursuant to *all* the criteria of § 1032.

### B. Communication pursuant to 15 V.S.A. § 1035

While the foregoing discussion is dispositive of the instant appeal, we feel compelled to include further comment as guidance to the trial court in resolving the jurisdictional issues of this case on remand.

In the instant case, the trial court, although alerted by defendant to the existence of the Georgia proceeding, failed to contact the Georgia court, pursuant to 15 V.S.A. § 1035(b),[3] to determine which court would be the more convenient or appropriate forum under 15 V.S.A. § 1036[4] to entertain this custody dispute. When the trial court eventually did communicate with the Georgia court, it had already assumed jurisdiction over the matter and had issued a temporary custody order. The court's communication with the Georgia court consisted merely of a letter stating that it had assumed jurisdiction over this matter and requesting that the Georgia court either stay defendant's custody proceeding or decline to exercise jurisdiction over the proceeding. No reference was made in the letter as to which forum would be more appropriate to resolve the dispute, nor could any inference be

---

[3] 15 V.S.A. § 1035(b) states that:

> Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under section 1038 of this title and shall consult the child custody registry established under section 1045 of this title concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state, it shall direct an inquiry to the state court administrator or other appropriate offiical of the other state.

See also 15 V.S.A. § 1035(c) ("If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction, it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.").

[4] 15 V.S.A. § 1036(a) states that:

> A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

See also Commissioners' Note, *supra*, § 6, 9 U.L.A. at 134-35:

> Courts are expected to take an active part under this section in seeking out information about custody proceedings concerning the same child pending in other states. In a proper case jurisdiction is yielded to the other state either under [15 V.S.A. § 1035 or under 15 V.S.A. § 1036.] Both sections must be read together.

drawn that the trial court would be receptive to a discussion with the Georgia court as to which state should exercise jurisdiction.

Although few courts have ruled on this issue, most courts that have examined this "failure to communicate" problem have found that the omission does not necessarily merit reversal on appeal, because such failures can be mere technical defaults not striking at the central purpose of the UCCJA: making custody determinations in the jurisdiction most likely to resolve the issue in the child's best interests. See, e.g., *In re Weinstein*, 87 Ill. App. 3d 101, 109, 408 N.E.2d 952, 958 (1980). But see, e.g., *In re Pima County Juvenile Action No. J-78632*, 147 Ariz. 584, 585, 712 P.2d 431, 432 (1986) ("juvenile court exceeded its jurisdiction in this case by proceeding contrary to statute without first communicating with the courts of Arkansas to determine the appropriate forum to hear the matter . . . .").

While we agree that a trial court's failure to communicate with a court in another jurisdiction may not, in and of itself, necessitate reversal, we find the trial court's actions here to have been wholly inadequate. One of the troubling aspects of this problem is the possible emotional damage to the child, while awaiting the resolution of the jurisdictional issue. We believe that all that 15 V.S.A. § 1035 requires is that a trial court make a good faith attempt to contact speedily the other jurisdiction before taking jurisdiction itself over the dispute. Cf. *Rexford* v. *Rexford*, 631 P.2d 475, 479 (Alaska 1980) (overriding importance of "best interest of the child" standard in relation to procedural requirements of the UCCJA). If, under the circumstances of a particular case, the court is unable to make contact with the other jurisdiction, the Vermont court should take jurisdiction over the dispute, issuing a temporary custody order, if necessary, until such time as contact has been made with the other court and the jurisdictional question has been resolved pursuant to 15 V.S.A. §§ 1035 and 1036.

### C. Inconvenient or inappropriate forum pursuant to 15 V.S.A. § 1036

■ The trial court also apparently failed to apply the inappropriate forum analysis of 15 V.S.A. § 1036[5] when the evidence on this issue was clearly contested. On the one hand, Vermont could arguably be claimed as the state with which the child and

---

[5] 15 V.S.A. § 1036(c) states that:

his parents have had closer connection, 15 V.S.A. § 1036(c)(2), since he and his parents had lived in Vermont almost all of their lives. Georgia, however, also has a legitimate claim as the more appropriate forum for resolving this dispute, since it was the child's home state at the time of the initiation of the proceedings and for a significant period of time prior thereto. See 15 V.S.A. § 1036(c)(1). Both states thus seem to possess substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

In the face of these obviously conflicting claims, the trial court failed to state its rationale as to why it considered Vermont the more appropriate forum. Cooperation among the different state courts that may possess jurisdiction over a custody dispute is more than a mere gesture of good will. Cooperation is vitally important to all purposes of the UCCJA,[6] especially the deterrence

---

In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) if another state is or recently was the child's home state;

(2) if another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) if the parties have agreed on another forum which is no less appropriate; and

(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes of this chapter.

This section applies only when there are simultaneous proceedings in more than one state, both of which have satisfied the jurisdictional requirements of 15 V.S.A. § 1032. This section does not provide an alternative method of obtaining jurisdiction over the custody proceeding if jurisdiction does not otherwise exist in the trial court. See Comment, *supra*, 34 Mercer L. Rev. at 881.

[6] 1979, No. 136 (Adj. Sess.), § 1, provided:

The general purposes of the [UCCJA] are to:

(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection,

of unilateral removals of children in order to obtain favorable custody awards. Actions such as those that occurred in the instant case should receive a heightened degree of scrutiny by the courts. Unfortunately, the trial court failed to articulate, if it did in fact consider, why it and not the Georgia court would be the more appropriate forum for resolving this dispute. Therefore, on remand the trial court must determine under 15 V.S.A. § 1036 whether it or the Georgia court is the more appropriate forum for resolving this dispute.[7] See *Walsh* v. *Walsh*, 80 A.D.2d 894, 894, 437 N.Y.S.2d 26, 27 (1981); see also *Webb* v. *Webb*, 245 Ga. 650, 652, 266 S.E.2d 463, 464 (1980), *cert. dismissed*, 451 U.S. 493 (1981) (example of problems arising when courts inappropriately apply this analysis, resulting in two states claiming jurisdiction pursuant to the UCCJA and issuing conflicting custody orders).

> training and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have closer connection with another state;
>
> (4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;
>
> (5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;
>
> (6) avoid re-litigation of custody decisions of other states in this state insofar as feasible;
>
> (7) facilitate the enforcement of custody decrees of other states;
>
> (8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and
>
> (9) make uniform the laws of those states which enact it.

[7] This Court rejects the actions of those jurisdictions that reward the winner of the "race to the courthouse" by allowing primary jurisdiction to rest with the state in which the custody dispute is originally initiated. See, e.g., *Lopez* v. *District Court*, 199 Colo. 207, 212 n.6, 606 P.2d 853, 856 n.6 (1980). We believe this approach contradicts the spirit of the UCCJA, which places the greatest emphasis on the best interests of the child. See UCCJA § 1(1), (2), (4), 9 U.L.A. at 116-17. We note with approval the cases of *Vanneck* v. *Vanneck*, 68 A.D.2d 591, 417 N.Y.S.2d 258 (1979), and *Rexford* v. *Rexford*, 631 P.2d 475 (Alaska 1980), where jurisdiction was determined using the "best interest of the child" as the guiding influence, and the first-in-time or home-state analysis taking secondary importance. See also Commissioners' Note, *supra*, § 6, 9 U.L.A. at 135 ("When the courts of more than one state have jurisdiction under sections 3 or 14, priority in time determines which court will proceed with the action, but the application of the inconvenient forum principle of [15 V.S.A. § 1036] may result in the handling of the case by the other court.").

*Reversed and remanded.*