# In re Anabelle Cifarelli (Annamae Turull, Appellant)

[611 A.2d 394]

No. 90-332

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed April 3, 1992

*Charles R. Tetzlaff* of *Latham, Eastman, Schweyer & Tetzlaff*, Burlington, for Plaintiff-Appellant.

*William B. Gray* of *Sheehey Brue Gray & Furlong*, Burlington, for Defendant-Appellee.

**Morse, J.** On December 10, 1988, Anabelle Cifarelli's parents and sister were asphyxiated in their Burlington home when a gas heating system malfunctioned. Anabelle, five months old at the time, survived and now lives with her maternal grandmother, Joan von Albrecht, in Bermuda. This controversy centers on the efforts by the paternal grandmother, Annamae Turull, who lives in Connecticut, to obtain visitation with Anabelle.

Mrs. Turull appeals a superior court decision vacating a probate order which conditioned Joan von Albrecht's authority to consent to adoption on the allowance of "reasonable right of visitation, or access . . . for [Anabelle] to maintain her relationship with her paternal grandmother." The superior court held that Vermont did not have subject matter jurisdiction over Anabelle's custody or visitation because, under the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA), 15 V.S.A. §§ 1031–1051, Bermuda was the proper jurisdiction to consider these issues. We affirm, but, because we hold the probate court did not have jurisdiction to order any relief beyond an initial order giving Mrs. von Albrecht temporary guardianship of Anabelle, we vacate the probate order dated January 12, 1990, in its entirety.

Anabelle was placed in the temporary custody of the Vermont Department of Social and Rehabilitation Services after her parents' deaths. At that time, Anabelle had no living relatives in Vermont. On December 13, 1988, she was released by the district court to the custody of Mrs. von Albrecht, a resident of Bermuda and appellee in this case. Mrs. von Albrecht obtained a guardianship appointment from the Chittenden Probate Court the next day. Shortly thereafter, following discussions with the child's paternal relatives, Mrs. von Albrecht took Anabelle to her home in Bermuda.

The parties disagree on the substance of their initial conversations regarding Anabelle. Mrs. Turull maintains that she was under the impression that Mrs. von Albrecht's custody of the child would be temporary. Mrs. von Albrecht, on the other hand, argues that the parties understood that long-term custody of the child would be with her. On December 19, 1988, Mrs. Turull initiated her own guardianship petition in probate court. At a December 19, 1989 status conference, the court appointed a guardian ad litem for Anabelle. Mrs. Turull did not request a hearing on her petition in the year that passed between its filing and the date it was first heard, January 10, 1990. During this time, the child lived with Mrs. von Albrecht in Bermuda.

On May 3, 1989, Mrs. von Albrecht submitted an adoption application in Bermuda, but did not inform Mrs. Turull of that action until August 1989. Apparently unable to resolve disagreements regarding visitation, Mrs. Turull requested the probate court to allow grandparent visitation under 15 V.S.A. § 1011 in the event her guardianship application was denied. On the same date, Mrs. von Albrecht moved to dismiss Mrs. Turull's petition for lack of subject matter jurisdiction.

On January 12, 1990, the probate court denied Mrs. von Albrecht's motion to dismiss and issued an order, giving her the authority, as the child's guardian, to consent to her husband's adoption of the child in Bermuda, but conditioned that authority on the allowance of paternal grandparent visitation. See 15 V.S.A. § 435(4) (consent shall be given by guardian if minor to be adopted is under a guardianship). The probate court also awarded Mrs. Turull preadoption visitation under the grandparent visitation statute, holding, without explanation, that the UCCJA did not apply. Mrs. von Albrecht appealed to Chittenden Superior Court and moved to dismiss the visitation petition and vacate that part of the guardianship order that conditioned her right to consent to adoption. Mrs. Turull did not contest in superior court the probate court's judgment in any respect. The superior court gave Mrs. von Albrecht unconditioned authority to consent to the adoption in Bermuda, and Mrs. Turull has appealed to this Court, claiming that Vermont courts have jurisdiction to resolve the visitation dispute. At the time of the appeal, the child was almost two years old and had been living with Mrs. von Albrecht for one and one-half years.

In the meantime, a Bermuda "Special Court" dismissed Mrs. von Albrecht's Bermuda adoption petition on November 9, 1990. She appealed that order, and, after a hearing, the Bermuda adoption application was granted with no conditions attached. This Court was informed at oral argument, however, that there is a procedure which allows that dispute to continue, by way of appeal to an appellate court in England.

Throughout this controversy, the only real disagreement is over the paternal relatives' access to the child. Mrs. von Albrecht objects to mandated visitation by the paternal relatives, believing that it would be in the best interest of the child to allow visitation at her discretion. While Mrs. Turull originally filed for guardianship, her attorney conceded at oral argument that visitation, as opposed to custody of the child, is the underlying concern. The superior court and the Bermuda Supreme Court both acknowledged this fact. Mrs. Turull's actions in the Bermuda proceedings verify this—she withdrew her application for adoption, and the child's paternal aunt and uncle were substituted as adoption applicants in her place. On appeal here, Mrs. Turull concedes that the UCCJA applies and that Bermuda is a "state" for purposes of the Act, but argues that Vermont has continuing jurisdiction over the custody and visitation issues.

■ We agree with the superior court that the Chittenden Probate Court had jurisdiction to enter the initial guardianship petition giving Mrs. von Albrecht temporary custody of Anabelle under 14 V.S.A. § 2645(1) ("the probate court may appoint a guardian of the minor . . . [w]hen the minor has no parent living authorized to act as guardian"), and under the UCCJA, 15 V.S.A. § 1032(a)(3)(B) (jurisdiction conferred to initially determine child custody when "necessary in an emergency to protect the child because he . . . is . . . neglected"). See *In re B.J.C.*, 149 Vt. 196, 198, 540 A.2d 1047, 1049 (1988) (emergency gives rise to temporary custody order only under UCCJA). The emergency guardianship order gave Mrs. von Albrecht authority to take custody of Anabelle, but ceased to have any effect once its purpose was accomplished. Jurisdiction to determine future custody and visitation issues was no longer in any Vermont court, and the probate court erroneously failed to apply the UCCJA standards in its January 1990 order.

The UCCJA is intended to eliminate the adverse consequences of multi-jurisdictional disputes over custody and visitation of children. The Act seeks to avoid shifting jurisdiction over children from state to state by requiring that the custody decree be "rendered in that state which can best decide the case in the interest of the child." Public Law No. 136, § 1 (1979 Adj. Sess.) (general purposes of UCCJA). The Act achieves this goal by encouraging courts to communicate with one another and by limiting custody jurisdiction to a child's home state or, if no home state exists, to the state with the strongest contacts with the child and the child's family. *Id.* §§ 1(3), (8); see also *Shute v. Shute*, 158 Vt. 242, 607 A.2d 890 (1992) (if no "home state" exists, court may look to other UCCJA factors in deciding whether to assert or decline jurisdiction). Because the UCCJA is not a reciprocal law, it "can be put into full operation by each individual state regardless of enactment of other states." Prefatory Note to the Child Custody Jurisdiction Act, 9 Uniform Laws Annotated at 118 (1988).

An examination of the provisions of the UCCJA shows that the inflexible approach to jurisdiction urged by appellant is contrary to the goals of the UCCJA. A consistent theme in the Act is the emphasis on the child's connections to the state taking jurisdiction. The facts of this case show that Vermont could not retain continuing jurisdiction under the UCCJA because Vermont is not the "home state." 15 V.S.A. § 1032(a)(1)(A) (state may take jurisdiction if it is child's "home state" at the commencement of the proceeding). Anabelle's age of five months at the time of the deaths of her parents and the fact that she was born in Bermuda precluded Vermont from being her "home state." See *id.* § 1031(5) ("home state" is the state in which the child lived for six consecutive months, and in the case of a child under six months old, is the state in which the child lived from birth). After her birth and a month in Bermuda, Anabelle was taken to New York for a short period. When she was one and one-half months old, her family moved to Burlington. Because she was not yet six months old at the time Mrs. von Albrecht obtained guardianship and brought her to Bermuda, she had not lived in any one state long enough to satisfy the "home state" test. Nor had she lived in any one state "from birth" to the commencement of proceedings. In situations

where the facts cannot satisfy the UCCJA "home state" test, courts find that the child has no home state. See, e.g., *In re Marriage of Hubbard*, 315 N.W.2d 75, 79 (Iowa 1982) (children had no home state under UCCJA because mother and children did not live in "any one state" for six consecutive months prior to the commencement of the proceeding).

■ No other UCCJA factors support continuing Vermont jurisdiction. Anabelle had no significant connections with Vermont, 15 V.S.A. § 1032(a)(2)(A) (court may take jurisdiction if child and "at least one contestant" have a "significant connection" with state), and Vermont did not have available "substantial evidence concerning the child's present or future care, protection, training, and personal relationships." *Id.* § 1032(a)(2)(B). Excluding the few months that Anabelle resided in Vermont, she had no ties here. On the other hand, at the time of the superior court order, she had been living in Bermuda for approximately thirteen months. Although Mrs. von Albrecht owned a vacation home in Stratton, Vermont, and property in Dorset, Vermont, Bermuda was the only forum that had access to evidence of the child's best interests. See *In re B.R.F.*, 669 S.W.2d 240, 246 (Mo. Ct. App. 1984) (because grandmother seeking custody lived in Indiana, not New Jersey, the state of the child's residence, that state presented the best "opportunity to investigate and validate facts" about her ability to care for child, and therefore New Jersey could not satisfy "home state" requirement). Furthermore, Bermuda did not decline to exercise jurisdiction. See 15 V.S.A. § 1032(a)(4) (state has jurisdiction where it "appears that no other state would have jurisdiction . . . or another state has declined to exercise jurisdiction"). Mrs. Turull understandably made no claim of jurisdiction in the state of her residence, Connecticut. Anabelle had never lived in Connecticut nor had her parents since her birth.

Most importantly, when the superior court dismissed the action, Vermont was an inconvenient forum according to the provisions of 15 V.S.A. § 1036.* By January 12, 1990, Bermuda had

---

* 15 V.S.A. § 1036(c) lists the factors a court shall consider to determine if it is

a closer connection with Anabelle and the contestants, and substantial evidence concerning her "present or future care, protection, training, and personal relationships" was readily available there. 15 V.S.A. § 1036(c)(2), (3). The von Albrechts, with whom she had been living during this time, were in Bermuda, as was ample information about her physical and psychological health and development. Bermuda's social service agencies had, over a number of months, investigated the von Albrechts, various members of the Turull family, and physicians who had cared for Anabelle in and outside Bermuda. The guardian ad litem observed the home situation of the von Albrechts, reviewed their character, and investigated Anabelle's ability to interact with various members of her family and the general community. It would have been impossible for the Vermont courts to equal the monitoring that occurred in Bermuda. As between Connecticut, Vermont and Bermuda, the latter was the most appropriate forum on the date of the superior court order deferring jurisdiction. Contrary to Mrs. Turull's argument, the Bermuda court found that Anabelle's presence in Bermuda and the subsequent establishment of ties there did not arise because Anabelle was wrongfully removed from Vermont. We agree.

■ Mrs. Turull argues that Vermont Rule of Probate Procedure 3(d) ("a probate proceeding involving a guardianship shall . . . continue until the guardianship is closed"), as well as other sources which outline basic jurisdictional principles, mandates Vermont jurisdiction over this custody determination. This argument disregards the UCCJA, which requires, regardless of jurisdictional rules to the contrary, that the interests of a

---

in the best interest of the child that another state assume jurisdiction:

(1) if another state is or recently was the child's home state;

(2) if another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) if the parties have agreed on another forum which is no less appropriate; and

(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes of this chapter.

child involved in a multi-jurisdictional custody dispute are to be addressed in the forum with the strongest ties to the child either by virtue of home state jurisdiction, or if no home state exists, according to the other UCCJA factors.

Mrs. Turull also contends that Vermont retains jurisdiction because it is the state in which the guardianship petitions were originally filed. She cites *Peloso v. Botkin*, 144 Vt. 461, 464, 479 A.2d 156, 158 (1984), and *Duval v. Duval*, 149 Vt. 506, 513, 546 A.2d 1357, 1362 (1988), for the proposition that the "criteria supporting jurisdiction under the UCCJA must be present at the time of the initiation of the particular custody proceeding, and whatever occurs after that time is irrelevant to the initial inquiry into jurisdiction." The use of this language misconstrues the holdings in these cases, which are consistent with our conclusion here. In both cases, children born in Vermont were taken out of state for over a year before being returned to Vermont where custody proceedings began almost immediately. *Duval*, 149 Vt. at 508, 546 A.2d at 1359; *Botkin*, 144 Vt. at 462–63, 479 A.2d at 157. In both cases, this Court stated that determination of jurisdiction could not be based solely on speculation about the reestablishment of ties to Vermont at some time in the future. See also *Kioukis v. Kioukis*, 185 Conn. 249, 256, 440 A.2d 894, 897–98 (1981) ("first state's exclusive jurisdiction . . . does not continue indefinitely [and] [a]t some point the child's connections with the first state become too tenuous to satisfy the demands" of the UCCJA).

■ In this case, the superior court based its decision on the dearth of evidence available in Vermont on the child's best interests and the ample evidence already in existence in Bermuda. This analysis is precisely what *Botkin* and *Duval* promote, and their holdings cannot be used to justify a blind application of the principle that continuing jurisdiction exists merely because Vermont was the state that was the "first in time." See *L.F. v. G.W.F.*, 183 N.J. Super. 195, 202, 443 A.2d 751, 754 (1982) ("common sense is offended by the concept that simply because a case is originally started in this State, all subsequent proceedings between the parties involving the original subject matter should be regarded as commenced here").

■ Finally, Mrs. Turull argues that the superior court's failure to communicate with Bermuda as required by the provisions of the UCCJA justifies reversal and remand. See 15 V.S.A. § 1035(c) ("If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state . . . it shall stay the proceeding and communicate with the court . . . to the end that the issue may be litigated in the more appropriate forum . . . ."); *id.* § 1036(d) ("[b]efore determining whether to decline or retain jurisdiction, the court may communicate with a court of another state . . . with a view to assuring that jurisdiction will be exercised by the more appropriate court . . . ."). We fail to see the practical harm to Mrs. Turull by a failure of the superior court to communicate with the Bermuda court. An inquiry into the appropriate forum, based on information adduced through cross-jurisdictional communication, would most likely have resulted in Vermont's deferral to the jurisdiction of Bermuda. A failure to comply strictly with the communication provision does not require reversal. See *Duval,* 149 Vt. at 515, 546 A.2d at 1363 ("most courts that have examined this 'failure to communicate' problem have found that the omission does not necessarily merit reversal on appeal, because such failures can be mere technical defaults not striking at the central purpose of the UCCJA"). In any event, the Vermont-appointed guardian ad litem was in communication with her counterpart in Bermuda, and the Vermont courts obtained information on Anabelle's living situation by virtue of this correspondence.

*Affirmed, with the further entry that the probate order dated January 12, 1990, is vacated in its entirety.*