2015 VT 82
 








Gosbee v. Gosbee (2014-383)


 


2015 VT 82


 


[Filed 12-Jun-20156]


 


NOTICE:  This opinion is subject
to motions for reargument under V.R.A.P. 40 as well as formal revision before
publication in the Vermont Reports.  Readers are requested to notify the
Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont
Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors
in order that corrections may be made before this opinion goes to press.










 
 

 
 
 2015 VT 82

 

 

 



 




 
 

 
 
 No. 2014-383

 

 

 



 




 
 

 
 
 Dain Gosbee

 

 
 
 Supreme Court

 

 

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
 On Appeal from

 

 

 

 
 
      v.

 

 
 
 Superior Court, Washington Unit,

 

 

 

 
 
  

 

 
 
 Family Division

 

 

 

 
 
  

 

 
 
  

 

 

 

 
 
 Christina Gosbee

 

 
 
 April Term, 2015

 

 

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
  

 

 

 

 
 
 Thomas
 J. Devine, J.

 

 

 

 
 
  

 
 Harold B. Stevens of Stevens
 Law Office, Stowe, for Plaintiff-Appellant.

 
  

 
 Nanci A. Smith of Nanci A.
 Smith, PLLC, Williston, for Defendant-Appellee.

 
  

 

 

 



 


PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and
Eaton, JJ.


 


 


¶ 1.            
ROBINSON, J.   This case calls upon us to consider Vermont’s
statutory residency requirement for filing a divorce action.  The trial court
dismissed husband’s divorce complaint on the ground that the residency
requirement was not satisfied.  We affirm.


¶ 2.            
Husband, Dain Gosbee, filed a divorce action in the Superior Court, Washington
Unit, Family Division, on November 1, 2013.  His wife, Christina Gosbee, was
living in Germany at the time with the parties’ minor child.  When he filed the
divorce complaint, husband also filed a motion to establish parentage and a motion
for a temporary order requiring wife to facilitate his telephonic or Web-based video
communication with the minor child.


¶ 3.            
Wife filed a motion to dismiss, arguing that the Vermont court did not
have personal jurisdiction over her; that the statutory residency requirement
for a divorce action in Vermont was not satisfied; and that the court did not
have jurisdiction to adjudicate issues concerning the minor child.[1] 
The trial court held a hearing and granted wife’s motion at the conclusion of
husband’s evidence.  The court rejected wife’s argument that the court lacked
personal jurisdiction, but concluded that the statutory residency requirement
was not satisfied and that Vermont did not have jurisdiction concerning matters
involving the minor child under the Uniform Child Custody Jurisdiction
Enforcement Act (UCCJEA), 15 V.S.A. §§ 1061-1094.  Husband appeals.


¶ 4.            
The trial court made the following findings.  Husband was born and
raised in Vermont.  His father resides in Vermont, and his mother in Georgia. 
The parties met in 2002 and began living together in Berlin, Vermont, in 2005. 
Husband worked at the Vermont State Hospital, where he suffered a skull injury. 
This injury is the subject of an ongoing claim for workers’ compensation.  In
2007, the parties bought a home in East Montpelier.  In 2009, their child was
born.  For a short time, the parties operated a store in Waterbury.


¶ 5.            
In March 2010, the parties sold their East Montpelier home, put some of
their furniture in storage, and moved in with wife’s parents at their home in
Barre, Vermont.  Later that year, wife’s parents moved to Germany, where wife’s
father worked as a civilian contractor with the U.S. military.  In October, the
parties decided to join wife’s parents in Germany so they could “work, travel
and save money.”  Their hope was to return to the United States when they had
saved enough money for a down payment on a house.  The parties never intended
to relocate to Germany or another foreign country on a permanent basis. 
Neither ever applied for German citizenship or a permanent work visa.  It was always
their intention to return to the United States.  Whether they intended to
return to Vermont is another matter.


¶ 6.            
In Germany, the parties did not live on a U.S. military base.  Wife
found work with a child-development center, and the parties acquired a vehicle
together and opened an account at a German branch of an international bank.


¶ 7.            
In January 2011, the parties traveled to Vermont for several weeks for
wife’s graduation from Vermont College, and so husband could make some
inquiries concerning his workers’-compensation claim.  In September 2011, the
parties traveled to Vermont for three or four weeks for their wedding and then
returned to Germany.


¶ 8.            
In October 2011, husband surrendered his Vermont driver’s license and obtained
a Georgia driver’s license.  The trial court concluded that husband’s actions
reflected his intent at the time to return to Georgia when their sojourn in
Germany was over.  Wife maintained her Vermont driver’s license throughout all
relevant periods.


¶ 9.            
After the parties’ return to Germany after their September 2011 wedding,
husband found work in Germany.  In June 2012, husband returned to Vermont to
pursue an internship.  Wife and the minor child followed a few weeks later. 
While they were in Vermont, the minor child was treated by a dentist.  The
internship did not work out, and the parties returned to Germany in early
October 2012.  The minor child has not been back to Vermont since that time.


¶ 10.        
In 2012, the parties’ daughter began attending preschool in Germany. 
The child has received medical and dental care and has taken dance lessons in
Germany.


¶ 11.        
At some point while the parties were in Germany, the parties asked
husband’s father to look at a camp that was for sale in Middlesex, Vermont. 
The parties eventually instructed him to buy the camp on their behalf.  When
husband’s father followed up, he learned the camp had been sold.  The court
found that the parties’ interest in purchasing real estate in Vermont is
evidence that at that time the parties intended to return to Vermont.  The
court did not indicate when this happened.


¶ 12.        
In 2013, tensions arose in the marriage.  The parties separated for
several months early in the year, but then reconciled.  In September, they
separated for the last time.  In total, the parties and their child had
remained in Germany for almost four years.


¶ 13.        
Husband returned to Vermont on October 7, 2013, five days after wife had
begun German divorce proceedings, and moved in with his father.  On October 9,
2013, husband applied for a Vermont driver’s license.  The court found that
this action demonstrated some intent to remain in Vermont.


¶ 14.        
After returning to the United States, husband arranged for his father to
give wife a mailing address for husband in Georgia, in care of his mother. 
Husband instructed that any divorce papers or other communications from wife
should be sent to that address.  Husband explained that he chose the Georgia
mailing address because he was thinking at that time of going to Georgia to see
his mother for an extended visit.  The trial court did not find husband
entirely credible on this point.  The court noted that insofar as husband had
until very recently held a Georgia driver’s license, the purported visit might
become a move.  The court also noted some suggestion that husband provided wife
the Georgia mailing address as a ruse to avoid service of German court documents. 
The court found that husband’s decision to use a Georgia mailing address
demonstrated uncertainty about his long-range plans.


¶ 15.        
Husband has not bought property or signed a lease since returning to
Vermont.  He has not found full-time work.  Husband expressed uncertainty about
where he would reside after the divorce, and indicated that he might return to
Germany if that is the only way to maintain regular contact with the child.


¶ 16.        
Based on these facts, the trial court concluded that husband was not a
resident of Vermont at the time he filed the divorce.  The court dismissed the
divorce complaint on this basis.  The court further concluded that even if it
had jurisdiction to adjudicate the divorce, it lacked subject-matter
jurisdiction to determine child-custody issues under the UCCJEA because Vermont
was not the minor child’s home state, and the child’s absence from Vermont for
three and a half years was not a “temporary absence” under the UCCJEA.  The court
found that the parents’ length of stay in Germany was indefinite, and that the
vast majority of evidence concerning the child’s well-being was in Germany.


¶ 17.        
On appeal, husband argues that the residency requirement was satisfied
because both parties remained domiciled in Vermont throughout their time in Germany. 
With respect to the UCCJEA argument, husband argues that Germany cannot be the
child’s home state, and that Vermont must be the home state.  In particular, husband
argues that the UCCJEA must be applied in a way that is consistent with the
federal Parental Kidnapping Prevention Act, which he contends does not recognize
foreign countries as home states.


¶
18.        
On appeal, we accept the trial court’s findings of fact unless
they are clearly erroneous.  Conley v. Crisafulli, 2010 VT 38, ¶ 3,
188 Vt. 11, 999 A.2d 677.  We review the trial court’s legal conclusions de
novo.  Meyncke v. Meyncke, 2009 VT 84, ¶ 6, 186 Vt. 571, 980 A.2d
799.


¶ 19.        
We begin with the question of whether the trial court erred in
concluding that the residency requirement was not satisfied in this case. 
Vermont’s residency requirement for divorce actions provides as follows:


A complaint for divorce or annulment of civil marriage may be brought
if either party to the marriage has resided within the State for a period of
six months or more. . . . Temporary absence from the State because of
illness, employment without the State, service as a member of the Armed Forces
of the United States, or other legitimate and bona fide cause shall not affect
the six months’ period . . . provided the person has otherwise
retained residence in this State.


 


15 V.S.A. § 592(a).


¶ 20.        
For purposes of divorce jurisdiction, residency is synonymous with
domicile.  Conley, 2010 VT 38, ¶ 5 (quoting Duval v. Duval,
149 Vt. 506, 509, 546 A.2d 1357, 1360 (1988), overruled on other grounds by
Shute v. Shute, 158 Vt. 242, 607 A.2d 890 (1992)).  Domicile is the “place
where a person lives or has his home, to which, when absent, he intends to
return and from which he has no present purpose to depart.”  Id. ¶ 6
(quotation omitted).  “To change domicile, there must be a relocation to the
new residence and continued dwelling there, coupled with an intention of
remaining there indefinitely; neither physical presence alone nor intention
alone is sufficient to effectuate a change of domicile.”  Id. (quotation
omitted).  If a person relocates to another state with an intention to remain
there for an indefinite time as a fixed place of abode, a change of residence
is effective even if the person has “a nebulous or floating intention of
returning at some future time.”  Duval, 149 Vt. at 511, 546 A.2d at 1361
(quotation omitted).


¶ 21.        
The trial court had jurisdiction over the divorce only if husband or
wife (or both) were Vermont residents for the six months preceding the date that
husband filed the divorce complaint, meaning they remained domiciled in Vermont
during the time they lived in Germany.  If they did not, then even if husband
was domiciled in Vermont for three weeks upon his return from Germany, he could
not satisfy the statutory residency requirement.  Husband argues that the
parties did maintain their Vermont domicile, emphasizing that their time in
Germany was merely a temporary absence, that the parties never intended to live
in Germany forever, and that the parties did intend to return to Vermont
someday.  His argument fails for two reasons, one factual, and one legal.


¶ 22.        
The factual problem with husband’s argument is that it depends on the
claim that the parties not only intended to return to the United States
someday, but that they had a fixed intention to return to Vermont after
their time in Germany.  Although the evidence cited by husband may have
supported that conclusion, other evidence suggested—and the court found—otherwise. 
In particular, the court pointed to evidence that in 2011, while the parties
were living in Germany, husband surrendered his Vermont driver’s license and
secured a Georgia driver’s license, as evidence of an intention, at that time,
to return to Georgia after the parties’ time in Germany.  This evidence was
sufficient to support the court’s finding that, although the parties intended
to return to the United States at some point, the parties did not intend to
return specifically to Vermont.  To the extent that husband’s appeal rests on
his claim that the parties maintained a fixed intention to return to Vermont when
they relocated to Germany, and thereafter until husband returned, it relies on
an understanding of the facts that is at odds with the trial court’s findings. 
Those findings were, in turn, supported by the evidence.


¶ 23.        
The legal problem with husband’s argument is that it conflates the
concepts of living someplace indefinitely and living someplace permanently.[2] 
Husband emphasizes that the parties never intended to make Germany their permanent
residence, and the evidence supports the trial court’s finding on this point.  But
the record also clearly supports the trial court’s finding that the parties
relocated to Germany indefinitely.  “Indefinitely” does not necessarily mean
permanently.  The ordinary meaning of “indefinitely” is “[w]ithout definition or limitation to a particular thing, case, time, etc.” 7
Oxford English Dictionary 842 (2d ed. 1989); accord American Heritage
Dictionary of the English Language 892 (5th ed. 2011) (“[l]acking precise
limits” or “[u]ncertain; undecided”); Random House Webster’s
Unabridged Dictionary 970 (2d ed. 2001) (“not clearly defined or determined;
not precise or exact”).


¶ 24.        
In order to change one’s domicile, one “must intend to reside [at the
new location] indefinitely with no present or fixed intent to move on upon the
happening of a reasonably certain event.”  Holmes v. Sopuch, 639 F.2d
431, 433-34 (8th Cir. 1981); see also Liberty Mut. Ins. Co. v. Craddock,
338 A.2d 363, 367 (Md. Ct. Spec. App. 1975) (“[D]omicile
could be established by showing that a person moved to a new home with a
present intention of remaining there indefinitely or for an unlimited time.”).


¶ 25.        
Although husband offered evidence that the parties’ relocation to
Germany was not permanent, he offered no evidence that the family moved for a
definite period, limited either in duration or by the occurrence of specific
events, such as graduation from an educational program in Germany or completion
of a specific undertaking.  Although he argues that the family’s travel to
Germany was a temporary absence because they intended to return to Vermont
someday, this Court has already recognized that “a nebulous or floating
intention of returning at some future time” is an insufficient tie to maintain
one’s domicile upon physically relocating to another place “with an intention . . .
of remaining there for an indefinite time as a fixed place of abode.”  Duval,
149 Vt. at 511, 546 A.2d at 1361 (quotation omitted).[3]


¶ 26.        
For these reasons, we conclude that the trial court’s conclusion that
husband could not satisfy the statutory residency requirement for filing a
divorce was not clearly erroneous, and we affirm the trial court’s dismissal of
his complaint on that ground.[4] 
Because we affirm the trial court’s dismissal of husband’s divorce action on
this ground, we need not reach the UCCJEA questions raised in husband’s appeal.


Affirmed.




 
 

 
 
  

 

 
 
  

 

 
 
 FOR THE COURT:

 

 

 

 
 
  

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
  

 

 
 
  

 

 

 

 
 
  

 

 
 
  

 

 
 
 Associate
 Justice

 

 

 



 












[1]
 Wife had filed a divorce action in Germany in early October, but had not
successfully served husband before he filed the Vermont divorce action.







[2] 
Abulqasim v. Mahmoud, 49 A.3d 828, 835 (D.C. 2012) (“The ‘intent’ aspect
of domicile is generally spelled out in terms indicating an intent to remain
for an indefinite future time or, as sometimes stated in the negative, the
absence of any intention to go elsewhere, but does not require an affirmative
intent to remain permanently in the new domicile.”) (alterations and citations omitted).







[3]
 For this reason, husband’s testimony that he did not believe that wife planned
to stay in Germany for the rest of her life does not show that Vermont remained
wife’s domicile.  Husband’s testimony that wife voted in the United States
presidential election in 2012 does not compel the conclusion that wife did not
give up her Vermont domicile.  First, husband testified that wife voted through
a mechanism made available through the United States military.  It is not clear
from husband’s testimony, however, whether wife cast an absentee ballot as a
Vermont resident.  Second, although voting in Vermont could be a significant
factor supporting a finding of domicile, in the context of the totality of the
evidence, the trial court was not compelled to find that wife retained her
Vermont domicile on account of husband’s testimony.


 







[4]
 We do not address the trial court’s conclusion that husband was not a Vermont
domiciliary at the time he filed the divorce.  We may affirm the judgment of
the trial court if there is “any legal ground for
justifying the result,” since the trial court “can
achieve the right result for the wrong reason.”  Gilwee v. Town of Barre,
138 Vt. 109, 111, 412 A.2d 300, 301 (1980).