NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 2

Nos. 2017-134 & 2017-135

| | |
|---|---|
| Taranjit Kaur Maghu | Supreme Court |
| v. | |
| Prabhjot Singh | On Appeal from Superior Court, Washington Unit, Family Division |
| Prabhjot Singh | September Term, 2017 |
| v. | |
| Taranjit Kaur Maghu | |

Kevin W. Griffin, J.

Matthew J. Buckley, Williston, for Plaintiff-Appellee/Cross-Appellant Prabhjot Singh.

Charles S. Martin of Charles S. Martin & Associates, PC, Barre, for Defendant-Appellant/ Cross-Appellee Taranjit Kaur Maghu.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **ROBINSON, J.** Wife appeals the denial of her motion to dismiss husband's divorce complaint under the theory that husband's nonimmigration visa status prevents him from being a Vermont domiciliary. In addition, wife argues that husband's complaint should be dismissed because Indian law governs the dissolution of the parties' marriage. We hold that husband's nonimmigration visa status is not an impediment to his establishing Vermont residency for purposes of filing a divorce action, and that the trial court properly denied wife's motion to dismiss. We affirm.

¶ 2.     The material facts are as follows.  Husband was raised in India and attended high school and college there.  In 2009, he moved to Montreal, Canada to pursue a master's degree in food science and engineering from McGill University.  In 2011, Keurig Green Mountain, Inc. (employer) hired husband to be a research scientist, and brought him to Vermont on a temporary H-1B employment visa.  In 2016, the employer received approval for husband's I-140 immigration application, which, as explored more fully below, put him on track for a permanent resident visa.

¶ 3.     Since 2011, husband has lived in Vermont.  Husband has received his Vermont driver's license, opened an account with a local bank, opened a 401K retirement account with his employer, and has accumulated five credit cards, all issued in the United States.  Over the last six years, husband has returned to India three times: a two-and-a-half-week trip in 2012 for his engagement to wife; a three-week trip in 2013 for the couple's wedding; and a two-week trip in 2014 for his sister's wedding.

¶ 4.     In 2012, husband met wife, who was then residing in India.  The couple married in India a short time later.  Soon after the wedding, wife moved with husband to Vermont on a 4-H spouse-dependent visa; she has lived in Vermont ever since.

¶ 5.     In December 2015, while wife was on a trip to India, husband filed for a no-fault divorce in Washington County Superior Court.  Upon her return, in March 2016, wife filed a complaint against husband for separate statutory spousal maintenance.[1]  The two proceedings were consolidated.[2]

---

[1]  We construe wife's amended complaint for spousal support as relying on 15 V.S.A. § 291, which authorizes a court to make orders concerning the support of a spouse.

[2]  In July 2016, the trial court dismissed husband's divorce action on the ground that husband had not proven timely service on wife.  Husband promptly refiled and served wife and the new divorce case was consolidated.  While these cases were pending, the trial court awarded wife temporary statutory spousal maintenance pending a final order.

¶ 6.    Wife moved to dismiss husband's divorce complaint on four bases. First, she contended that the court lacked subject matter jurisdiction because husband's nonimmigration H-1B visa status made it impossible as a matter of law for him to claim Vermont residency. Second, wife asserted that the court should dismiss the complaint on the basis of comity because India— where the couple married—recognizes only fault grounds for divorce. Third, she argued that the contractual doctrine of lex loci demanded that the court look to the divorce laws of the jurisdiction in which the couple were married. Under wife's theory, if the grounds for divorce are "not authorized by the jurisdiction where the [marriage] contract was entered into, the person seeking relief cannot obtain it in another jurisdiction." Fourth, wife argued that the doctrine of equitable estoppel barred the complaint because husband originally filed for divorce while wife was in India, and thus husband had attempted to deny wife entrance back into the country, participation in the divorce, and her opportunity to file for a permanent resident visa.

¶ 7.    In February 2017, after an evidentiary hearing, the court denied wife's motion to dismiss. Noting case law from other jurisdictions, the court held that a nonimmigrant alien may establish Vermont domicile by proving intent to remain coupled with positive steps toward obtaining U.S. citizenship. In concluding that husband lived in Vermont and intended to remain here indefinitely, the court relied on the fact that husband had lived and worked continuously in Vermont since 2011; had a Vermont driver's license and vehicle registration, local bank account, and United States-issued credits cards; and had returned to India for only a few brief visits over the course of his years living in Vermont. The court found that husband's actions in pursuit of a permanent resident visa, combined with the factors noted above, were sufficient to establish his domicile in Vermont.

¶ 8.    The court likewise rejected wife's remaining arguments. The court declined to defer to Indian law on the basis of comity considerations because the couple's residence in Vermont and their intent to remain in this state rendered Vermont's laws most applicable to the

divorce proceeding. It rejected wife's <u>lex loci</u> argument as well because it did not identify any authority for invoking the doctrine to prevent the dissolution of a marriage, rather than to validate one, and because wife's approach would preclude state courts in the United States from asserting jurisdiction over foreign executed marriages. Finally, the court rejected wife's equitable estoppel argument because she was not "ignorant of the facts of husband's intent to file for divorce." In April 2017, the court issued a final order and decree for the no-fault divorce. At the same time, the court dismissed wife's claim for separate statutory maintenance because of her failure to prosecute her claim.[3]

¶ 9.     On appeal, wife raises the same challenges to the court's jurisdiction in the divorce action as below. For the reasons set forth below, we conclude that husband's nonimmigration residency status is not a legal barrier to domicile, and that the trial court appropriately granted the divorce.

I. Husband's Residency

¶ 10.     We review the legal analysis underlying the trial court's denial of a motion to dismiss for lack of subject matter jurisdiction without deference, and its factual findings for clear error. <u>Gosbee v. Gosbee</u>, 2015 VT 82, ¶ 18, 199 Vt. 480, 125 A.3d 514; <u>Conley v. Crisafulli</u>, 2010 VT 38, ¶ 3, 188 Vt. 11, 999 A.2d 677.

¶ 11.     Vermont law includes a residency requirement that is a prerequisite to the court's subject matter jurisdiction over the dissolution of a marriage:

> A complaint for divorce or annulment of civil marriage may be
> brought if either party to the marriage has resided within the State

---

[3]     Although wife filed an action seeking statutory spousal maintenance, she did not participate in litigation of the merits of the divorce case and did not attend the consolidated final divorce hearing. Counsel entered a limited appearance in the divorce case on wife's behalf for the sole purpose of challenging the court's authority to entertain the action. In so doing, counsel provided the court with authority from an Indian court suggesting that a Vermont order dissolving the parties' marriage in violation of applicable Indian law would not be enforceable in India unless wife submitted herself to the jurisdiction of the Vermont court and contested the matter on the merits.

for a period of six months or more, but a divorce shall not be decreed for any cause, unless the plaintiff or the defendant has resided in the State one year next preceding the date of final hearing. Temporary absence from the State because of illness, employment without the State, service as a member of the Armed Forces of the United States, or other legitimate and bona fide cause shall not affect the six months' period or the one-year period specified in the preceding sentence, provided the person has otherwise retained residence in this State.

15 V.S.A. § 592(a). Thus, for our family courts to have jurisdiction over a divorce action, one of the parties must be a resident of Vermont for at least six months preceding the complaint.

¶ 12. "Residence" in § 592(a) is synonymous with domicile. See Gosbee, 2015 VT 82, ¶ 20; Conley, 2010 VT 38, ¶ 5. Domicile requires "residence and continued dwelling, coupled with an intention of remaining [in Vermont] indefinitely"—a "mere presence within the state" is not sufficient. Conley, 2010 VT 38, ¶¶ 5-6 (quotation omitted); see also Walker v. Walker, 124 Vt. 172, 174, 200 A.2d 267, 269 (1964) ("Neither residence alone, nor intention, without more, is enough."). To gain a new domicile, one must have the intent to abandon his or her previous domicile. Conley, 2010 VT 38, ¶ 6. A change in domicile, however, can be effective "even if the person has a nebulous or floating intention of returning at some future time." Gosbee, 2015 VT 82, ¶ 20 (quotation omitted). This is because a finding of domicile requires evidence that a party intends to remain in the state indefinitely, not necessarily permanently. Id. ¶ 23. We have defined "indefiniteness" in this context as " '[w]ithout definition or limitation to a particular thing, case, time, etc.' " Id. (quoting 7 Oxford English Dictionary 842 (2d ed. 1989) (alteration in original)).

¶ 13. Applying these principles, we conclude that, aside from the question of husband's nonimmigrant alien status, the record amply supports the trial court's conclusion that husband is a Vermont domiciliary. We reject wife's contention that husband's status nevertheless undermines this conclusion as a matter of law. Whether we view husband's status as minimally relevant, as some courts have done, or require that in the face of that status he demonstrate some affirmative

5

steps to establish permanent residence or citizenship, as at least one court has done, the record supports the trial court's conclusion that husband has proven domicile in this case. Husband has not only expressed a desire to remain in Vermont indefinitely notwithstanding the durational limits on his visa at the time he came to the state, he has also taken substantial and effective steps toward changing his status. Wife's arguments to the contrary are not persuasive.

¶ 14. The trial court's findings support its conclusion that husband lives in Vermont and has an intention to remain here indefinitely. In addition to relying on husband's own testimony to that effect, the trial court found that husband has resided in Vermont since 2011, has paid state and federal taxes, has maintained continuous employment in Vermont, has a Vermont driver's license, with a vehicle registered here, and uses a local bank account and United States-issued credit cards. These findings are consistent with evidence of domicile. See Conley, 2010 VT 38, ¶ 9 ("In the context of determining domicile for personal jurisdiction, Vermont courts have found certain facts determinative, including the state where the individual has his or her driver's license, registration, property, and job."). Moreover, the court found that since 2011, husband has only returned to India on three occasions, each lasting no longer than three weeks in length—two of the three trips pertained to husband's engagement and marriage to wife. The trial court reasonably found that these brief trips back to India do not provide evidence that husband intends his domicile to be anywhere other than Vermont. See Torlonia v. Torlonia, 142 A. 843, 844 (Conn. 1928) (holding that wife, in country on temporary nonimmigration visa, was domiciled in state despite "brief and temporary sojourns" to other areas of country for vacation). Rather, husband's continued residence in Vermont, with only occasional trips back to India, demonstrates his plan to remain here.

¶ 15. Husband's status as a nonimmigrant alien does not undermine this conclusion. Wife argues that, although husband physically lives and intends to stay in Vermont, he is not a domiciliary of Vermont because the United States Citizenship and Immigration Service (USCIS) has not granted him permission to remain here permanently. Because husband's temporary

6

nonimmigration visa has a set end-date, wife contends that "all the intent in the world does not make him a permanent resident." We disagree. Although husband's status may support the inference that at the time he accepted the nonimmigrant visa he intended to return to his home country, it does not prevent him from subsequently forming a bona fide intent to remain in Vermont indefinitely. For this reason, we join those jurisdictions that allow for domicile despite a party's presence in the state on a temporary nonimmigrant visa. See Bustamante v. Bustamante, 645 P.2d 40, 42 (Utah 1982) ("We emphasize that a visa application or renewal form indicating a date certain for return to one's home country is not necessarily inconsistent with an actual conditional intent to establish permanent residency in the United States, if possible, by means of renewals and extensions of one's nonimmigrant status or attainment of immigrant status."); In re Marriage of Pirouzkar, 626 P.2d 380, 383 (Or. Ct. App. 1981) ("[F]ederal immigration law does not prevent the states from allowing a nonimmigrant alien such as wife to establish a domicile of choice for purposes of jurisdiction."); see also Babouder v. Abdennur, 566 A.2d 457, 461 (Conn. Super. Ct. 1989); Cohen v. Cohen, 84 A. 122, 124 (Del. Super. Ct. 1912); Alves v. Alves, 262 A.2d 111, 115 (D.C. 1970); Nicolas v. Nicolas, 444 So. 2d 118, 1120 (Fla. Dist. Ct. App. 1984); Abou-Issa v. Abou-Issa, 189 S.E.2d 443, 445 (Ga. 1972); Taubenfeld v. Taubenfeld, 93 N.Y.S.2d 757, 759 (App. Div. 1949); Das v. Das, 603 A.2d 139, 141-42 (N.J. Super. Ct. Ch. Div. 1992); Sinha v. Sinha, 491 A.2d 899, 900-01 (Pa. Super. Ct. 1985), rev'd on other grounds, Sinha v. Sinha, 526 A.2d 765 (Pa. 1987); Adoteye v. Adoteye, 527 S.E.2d 453, 455-56 (Va. Ct. App. 2000); Williams v. Williams, 328 F. Supp. 1380, 1382-83 (V.I. 1971). But see Polakova v. Polak, 669 N.E.2d 498, 499 (Ohio Ct. App. 1995) (holding that wife, in state on temporary "J" status visa, did not "effectively" abandon her home country as domicile because, at the time of the hearing, she "was not legally capable of changing her visa" to a permanent resident status); Sinha v. Sinha, 526 A.2d 765, 768 (Pa. 1987) (McDermott, J., concurring) (explaining husband could not claim domiciliary intent without approval from federal Immigration Bureau to be permanent resident).

7

¶ 16.　Courts that have held that a party's presence in the state on a nonimmigration visa does not, as a matter of law, preclude the party from establishing domicile for purposes of a divorce action have described the relevancy of a party's visa status to the domicile determination in varying ways. Some courts have held that a party's nonimmigration visa status is of little to no importance. In Alves v. Alves, the District of Columbia Court of Appeals examined a divorce action brought by a husband from England in the United States on an employment-based nonimmigration visa that was subject to renewal every two years for an indefinite period. 262 A.2d at 113. The appeals court affirmed the trial court's conclusion that husband was a domiciliary, focusing on husband's "connection with the District of Columbia and the legal rights and duties which accompany his presence" there. Id. at 114. That husband had not applied for a permanent resident visa did not deter the court because it was possible for him to remain in the United States indefinitely under his current designation. Id. at 114-15. The court noted that visa status "has little relevance to the question of domicile." Id. at 115.

¶ 17.　On the other hand, at least one jurisdiction requires evidence that a party residing in the state on a temporary visa has taken affirmative steps toward securing a permanent resident visa. In Adoteye v. Adoteye, the Virginia Court of Appeals examined whether wife, a Ghanaian citizen residing in Virginia on a temporary employment nonimmigration G-4 visa, could claim Virginia residency for purposes of divorce. 527 S.E.2d at 455. The wife argued that she was a domiciliary of Virginia because she owned a home there; her children were born in Virginia and spoke English exclusively; she held a Virginia driver's license with a car registered in Virginia; she had returned to Ghana only for "vacations" lasting no more than six weeks at a time; she had local bank accounts; she did not own property in Ghana and did not pay taxes there; and she had clearly stated her desire to remain in Virginia indefinitely. The court determined that "these circumstances" created "a persuasive package," but subsequently held that the wife was not domiciled in Virginia because she had not taken action to establish citizenship or permanent

8

residence. Id. at 456. The court noted that when the wife's employment ceased, so would her right to remain in Virginia under her temporary visa, and this was inconsistent with her being domiciled in Virginia. Id.

¶ 18. In this case, we need not decide whether a party present in Vermont on temporary nonimmigrant status must take affirmative steps toward securing citizenship or a permanent resident visa in order to overcome the inferences that may otherwise arise from the nonimmigrant status. Husband has established his domicile under either approach.

¶ 19. Our conclusion on this point is supported by a review of husband's immigration status, and the steps he has taken toward establishing permanent residence. As noted above, the USCIS originally granted husband an employer-sponsored H-1B nonimmigrant visa. The H-1B visa category "applies to people who wish to perform services in a specialty occupation." U.S. Citizenship & Immigr. Serv., H-1B Specialty Occupations, DOD Cooperative Research and Development Workers, and Fashion Models, https://www.uscis.gov/working-united-states/ temporary-workers/h-1b-specialty-occupations-dod-cooperative-research-and-development- project-workers-and-fashion-models [https://perma.cc/7YA4-NPYT]; 8 U.S.C. § 1184(i). Husband's employer had to receive this H-1B approval from the USCIS prior to husband's relocation to Vermont in 2011. The H-1B visa allows husband to remain in the United States for up to three years, with the possibility of his employer filing for a three-year extension—making the potential stay six years in total. A. Fragomen et al., H-1B Handbook, Period of Stay § 1:22 (2017 ed.). Employer's petition for husband's three-year extension was approved in 2014, which meant that husband had an end-date on his H-1B visa of August 2017.

¶ 20. To receive a permanent resident visa, husband will have to complete three steps— two of which he has already completed. Matovski v. Gonzales, 492 F.3d 722, 727 (6th Cir. 2007); Rizvi v. Dep't of Homeland Sec., 37 F. Supp. 3d 870, 873-75 (S.D. Tex. 2014). First, the employer files with the U.S. Department of Labor to certify that the "prospective employer needs a worker

9

with certain qualifications and that it cannot fill the need with a United States worker." Rizvi, 37 F. Supp. 3d at 873; 8 U.S.C. § 1182(a)(5)(A)(i)(I)-(II). In 2015, husband's employer received this approval from the U.S. Department of Labor. Second, the employer files, on behalf of the employee, an I-140 visa application with the USCIS for a permanent employment-based visa. 8 C.F.R. § 204.5. The trial court found that husband had attained USCIS approval of employer's I-140 immigrant petition. Third, once the I-140 application is approved by USCIS, "the petition will be forwarded to the Department of State for the allotment of a [permanent resident] visa number." Rizvi, 37 F. Supp. 3d at 874 (quotation omitted). The I-140 approval allows the employee—in this case, husband—to file an I-485 application to be a lawful permanent resident, 8 U.S.C. § 1255(a), and it allows the employee to forgo the normal H-1B six-year time limitation. See A. Fragomen et al., supra, § 1:22 ("[A]n H-1B worker who has an approved I-140 employment-based petition and is otherwise eligible for an adjustment of status except for the unavailability of an immigrant visa because of per country limits may obtain an extension of status without regard to the [H-1B] six-year limit."). There is no evidence that husband has filed his I-485 application. But, as noted above, husband's I-140 application was approved in 2016, which allows him to remain in Vermont indefinitely while awaiting his allotment of a permanent resident visa number. If husband were to switch jobs to a new employer, he would not lose his I-140 approval. 8 U.S.C. § 1154(j); see also Musunuru v. Lynch, 831 F.3d 880, 884 (7th Cir. 2016) ("[A] worker no longer has to remain with his sponsoring employer until his I-485 application is approved. In effect, the worker's new employer can use the previous employer's labor certification and I-140 petition to hire the worker (who is said to then 'port' to the new employer), so long as the new job is in the same or similar occupational classification as the previous one.").

¶ 21. Given the above, the trial court could properly conclude that, while in Vermont on a temporary H-1B visa, husband took substantial steps toward obtaining a permanent resident visa by applying for, and receiving, his I-140 status. As a result, husband is now in line for a permanent

10

resident visa, and is no longer subject to the H-1B visa time limitation. See <u>supra</u>, ¶ 12. These facts support the trial court's conclusion even under the more onerous test noted above and applied by the trial court.

¶ 22.    Wife's argument that the I-140 approval demonstrates the <u>employer's</u> intent for husband to remain, rather than <u>husband's</u>, carries little weight because the employer normally files the I-140 application on behalf of the employee. See U.S. Citizenship & Immigr. Serv., Petition Filing and Processing Proc. for Form I-140, Immigr. Petition for Alien Worker, https://www.uscis.gov/forms/petition-filing-and-processing-procedures-form-i-140-immigrant-petition-alien-worker [https://perma.cc/8AW4-3UW4] ("The employer generally files the Form I-140 for the foreign national."). The trial court could reasonably infer that husband's employer would not have filed the petition without his consent and input.

¶ 23.    We are further unconvinced by wife's argument that husband's domiciliary intent is contradicted by the lack of record evidence that husband has filed his I-485 application to receive his green card. Through receiving his I-140 approval—and through other actions explored below that are consistent with domicile—husband has done more than enough to support the trial court's conclusion that he intends to remain in Vermont indefinitely, and that his temporary nonimmigration status should not prevent him from claiming Vermont residency.

¶ 24.    Nor are we persuaded that the USCIS's ability to revoke husband's I-140 approval for cause defeats his residency.[4] Assuming that a party has established presence in this state, a

---

[4] Husband's permission to be in this country is not etched in stone. First, his I-140 application approval can be revoked and, hypothetically, husband could be subject to deportation from the United States. The Attorney General of the United States "may revoke an approved I-140 petition 'at any time, for what [the Attorney General] deems to be good and sufficient cause.' " <u>Rajasekaran v. Hazuda</u>, 815 F.3d 1095, 1098 (8th Cir. 2016) (quoting 8 U.S.C. § 1155). The federal government's intent to revoke the I-140 approval is sent to the employer-petitioner, <u>id</u>.; 8 C.F.R. § 205.2(b), who may examine evidence for the basis of the revocation and appeal the decision. 8 C.F.R. § 103.2(b)(16); <u>id</u>. § 205.2(c), (d). Moreover, if and when husband receives his permanent resident visa, he could still hypothetically face deportation from this country for a

finding of domicile boils down to a question of intent. See <u>Walker</u>, 124 Vt. at 174, 200 A.2d at 269 ("The troublesome aspect of domicile is that it deals not only with acts, but with states of mind."). We see no reason to discount husband's intent to remain in Vermont merely because it is technically possible for him to lose his I-140 approval.[5] <u>Any</u> domiciliary—whether a resident alien or not—could potentially leave the state one day due to unforeseen, or even foreseen, circumstances.[6] It is not for our family courts to forecast this possibility, but rather to decide whether the evidence supports a party's stated intent to remain in Vermont as of the time of divorce.

¶ 25. In sum, we hold that husband's temporary nonimmigration status does not, as a matter of law, preclude a determination of domicile, and we conclude that the trial court's determination that husband's approved I-140 application, coupled with other evidence, demonstrate his intent to remain in Vermont indefinitely is supported by the record and the law.

## II. Comity

¶ 26. We further reject wife's contention that in an exercise of deference, or "comity," to the Indian legal system, the trial court should have dismissed husband's no-fault divorce petition because the couple had married in India, which recognizes only fault grounds for divorce.

---

host of reasons, including criminal offenses, failure to register or falsification of documents, or terrorist activities. 8 U.S.C. § 1227(a)(2), (a)(3), (a)(4)(B).

[5] Wife's challenge to the validity of husband's approved I-140 application does not undermine our conclusion. If there are problems with husband's approved application, that is a matter for adjudication by federal immigration authorities, not this Court or the trial court. See <u>In re Marriage of Pirouzkar</u>, 626 P.2d at 384 (explaining that "[t]he enforcement of the immigration laws is the function of the federal government," and with "no way of knowing when, if ever, wife may be required to leave this country" the court will not "deny her access to the courts . . . for the purposes of dissolution of the marriage of the parties").

[6] Wife's logic would apply not just to a resident here on I-140 status, but also to permanent resident alien here on a green card, as permanent resident aliens are subject to deportation as well. 8 U.S.C. § 1227(a). The result would be to preclude anyone other than a citizen of the United States from establishing domicile for purposes of divorce.

12

"Comity" describes "the extent to which the law of one nation, as put in force within its territory, whether by executive order, by legislative act, or by judicial decree, shall be allowed to operate within the dominion of another nation." Hilton v. Guyot, 159 U.S. 113, 123 (1895). This Court has recognized that "in appropriate circumstances, principles of comity can provide an additional basis for nonintervention by a Vermont court." Cavallari v. Martin, 169 Vt. 210, 215, 732 A.2d 739, 743 (1999). Comity does not mandate deference to a foreign jurisdiction. See Boston Law Book Co. v. Hathorn, 119 Vt. 416, 422, 127 A.2d 120, 125 (1956) (explaining that comity "has the power to persuade but not command" (quotation omitted)). And it "never requires a court to give effect to the laws of another state which conflict with those of its own state." In re Dennis' Estate, 98 Vt. 424, 427, 129 A. 166, 167 (1925).

¶ 27.    The trial court did not abuse its discretion in declining to defer to Indian law in this case. A decision to the contrary would require the trial court to disregard the clear policy established by the Legislature and reflected in our statutes, would be inconsistent with the parties' having lived in Vermont from the time of their marriage, with neither intending to move back to India, and would lead to absurd results.

¶ 28.    As noted above, comity does not demand that our courts defer to foreign law, and especially not when that law contradicts our own. Our Legislature has chosen to allow for no-fault divorce. See 15 V.S.A. § 551(7) ("A divorce from bond of matrimony may be decreed . . . . when a married person has lived apart from his or her spouse for six consecutive months and the Court finds the resumption of marital relations is not reasonably probable."); Zwieg v. Zweig, 154 Vt. 468, 471, 580 A.2d 939, 942 (1990) ("The policy underlying no-fault dissolution of marriages recognizes that divorces should be granted when a marriage has broken down, so that the parties may be free to form other, and, it is hoped, happier alliances.").

¶ 29.    Moreover, in this case, husband lived in Vermont prior to the parties' marriage, and after they married in India wife immediately moved to Vermont to live with husband. Both have

indicated their desire to remain in Vermont indefinitely. On these facts, the trial court correctly concluded that deference to a foreign jurisdiction with inconsistent divorce laws, and to which the couple has no desire or plans to return, makes little sense.

¶ 30. Wife's conception of comity would require Vermont's family courts to decline hearing any divorce premised on grounds different from the law under which the couple originally married. An untold number of Vermont residents would be denied access to a divorce under Vermont law—resident aliens and citizens alike. We decline to deny this access merely because a party was married in a country with divorce law inconsistent with those of Vermont. [7]

### III. Lex Loci

¶ 31. For similar reasons, we reject wife's argument that lex loci requires dismissal of this divorce action. Under the doctrine of lex loci, a contract's validity, extension, performance, or release should be determined by the law of the jurisdiction in which the contract was entered. Harrison v. Edwards, 12 Vt. 648, 652 (1840). Wife contends that this Court should apply lex loci to dismiss the divorce because the remedy the husband seeks—a no-fault divorce—"is not available" as grounds for terminating the marriage in India—the situs of the couple's marriage contract. We have previously applied lex loci to validate marriages entered into in foreign jurisdictions, see Wheelock v. Wheelock, 103 Vt. 417, 419, 154 A. 665, 666 (1931) (noting the "general rule that a marriage valid where it is celebrated is valid everywhere"), and it has been used to validate foreign divorce decrees. See, e.g., Bogardi v. Bogardi, 542 N.W.2d 417, 420 (Neb. 1996).

---

[7] We reject wife's argument that the court's grant of a no-fault divorce contrary to India's Hindu Marriage Act, and the religious requirements reflected therein, impinges on wife's free exercise of religion in violation of Chapter I, Article 3 of the Vermont Constitution. Quite the opposite, it would be constitutionally problematic, to say the least, if we began to decline access to a divorce from an otherwise qualified domiciliary on the basis of the religious convictions of the other party.

14

¶ 32. But lex loci has no application with respect to the jurisdiction of a court to entertain a divorce action. Wife has not identified any case applying lex loci to dismiss a divorce complaint. Other states that have examined this specific question have traditionally held that the contractual concept of lex loci is inapplicable to questions of divorce jurisdiction. See Cohen, 84 A. at 124 ("If marriage were a contract, it might be urged that it could be enforced or dissolved only according to the lex loci contractus . . . . [B]ut as marriage is a status in which society has an interest and over which the state has control, its existence and its dissolution must be governed by the lex domicilii."); Tolen v. Tolen, 2 Blackf. 407, 412 (Ind. 1831) (declining to grant lex loci to dismiss divorce for marriage that occurred outside state because state statute "provides that absolute divorces shall be granted on the petition of the party aggrieved, and that all persons who shall have resided in the state one year shall be entitled to the benefit of the act"); Adams v. Palmer, 51 Me. 480, 484 (1863) (examining lex loci application to divorce jurisdiction and concluding "the law of divorce depends not upon that of the place where the relation of marriage is entered into, but upon that of the place where the dissolution is sought to be obtained"). If we adopted wife's approach, many otherwise eligible Vermont residents would lose access to divorce under Vermont's laws.

¶ 33. Furthermore, we will not elevate a common-law contractual doctrine over statutory requirements regarding divorce established by our Legislature. A marriage is not simply a type of bilateral contract. Marriage is the union of two parties pursuant to parameters set by the state, infused with private interests and public policy considerations. See Lourie v. Lourie, 2016 VT 57, ¶ 9, 202 Vt. 143, 147 A.3d 1015 ("[T]he family court has a statutorily authorized role to play in divorce proceedings to assure a fair and equitable dissolution of the state-sanctioned institution of marriage." (quotation omitted)); Baker v. State, 170 Vt. 194, 220, 744 A.2d 864, 883 (1999) ("[T]he rights and obligations of marriage rest not upon contract, but upon the general law of the State, statutory or common, which defines and prescribes those rights, duties and obligations.

15

They are of law, not of contract." (quotation omitted)). Within constitutional limitations, our Legislature, as a reflection of the electorate, has the role of the prescribing the parameters of marriage—and its dissolution—in this state. We will not outsource this role.

## IV. Equitable Estoppel

¶ 34. Last, we summarily reject wife's argument that the doctrine of equitable estoppel prevented the trial court from granting the divorce. The logic of wife's argument is not entirely clear, but appears to be as follows: Wife came to the United States under an H-4 visa, as husband's dependent; husband acted deceptively in filing for divorce while wife was in India in an attempt to terminate wife's legal status in the United States and prevent her from returning. When she successfully returned, he withheld necessary documents for her to obtain a work permit under her H-4 status. As a result, wife has been denied the opportunity to become self-sufficient. Wife relies upon husband's conduct to obtain her own legal status, and even to get a job in the United States. Husband has deliberately thwarted wife's efforts, including pursuing a divorce that will terminate wife's legal status. Accordingly, the appropriate equitable response to husband's misconduct is to prevent him from obtaining a divorce, and instead to order a statutory legal separation under 15 V.S.A. § 555.

¶ 35. Even assuming that wife could prove her allegations (and the trial court concluded that she had not) the notion that a court could prevent a party from pursuing a divorce—that is, require a party to remain legally married—as an equitable sanction for deceptive conduct has no support in the law. Although wife describes the ways in which she believes she was ill-treated, she cites no caselaw to support the notion that equity empowers a court to refuse to allow an otherwise qualifying spouse to dissolve a marriage through divorce.[8]

---

[8] Insofar as wife frames this argument as one of "equitable estoppel," rather than a mere invocation of equitable considerations, she has not clearly identified what steps she claims to have taken in reliance on husband's representations or what representations she relied on. Her argument appears to be premised on the claim that she traveled to India in reliance on husband's

¶ 36. Because the trial court had jurisdiction to dissolve the party's marriage, and because we are unwilling to apply the doctrines of comity, <u>lex loci</u>, or equitable estoppel to dismiss husband's divorce complaint, we affirm the trial court's denial of wife's motion to dismiss, its subsequent unchallenged final divorce order, and its dismissal of wife's claim for statutory spousal maintenance.[9]

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

representations that he would join her there and then he filed a divorce action while she was gone, preventing her from returning. This argument, if it had any merit, was essentially mooted by the trial court's dismissal of the first divorce complaint and wife's successful return to the United States. Moreover, the trial court concluded that wife had failed to prove the facts on which she based this argument. To the extent that her argument is that she married husband in reliance on his remaining married to her forever, and the legal status in the United States that the marriage created for her, that reliance is neither reasonable nor enforceable through compelled continued marriage.

[9] Wife made no independent arguments regarding the statutory spousal maintenance claim and we affirm the trial court's judgment below in that case.

17