Filed 03/23/26

VERMONT SUPERIOR COURT

Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-02775

---

Kayenta Township Commission et al v. Royal Churchill

---

## DECISION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is an action to recognize, as enforceable in Vermont, a civil money judgment rendered by a court of the Navajo Nation, a federally-recognized Indian Tribe. Plaintiff Kayenta Township Commission, the governing body of a political subdivision of the Navajo Nation (Kayenta Township), seeks this Court's recognition of a Navajo trial court judgment entered against Defendant Royal N. Churchill, an owner of real property in Vermont. Plaintiff now moves for a summary judgment. Mr. Churchill opposes the motion, asserting that various principles of comity—or, more accurately, exceptions to the general presumption that recognition should be afforded to court judgments of another sovereign as a matter of comity— require or weigh against recognition. Because Plaintiff has shown that there is no genuine dispute as to any material issue of fact, and because exceptions to the comity presumption do not apply or suffice to warrant non-recognition of the Navajo Nation judgment, Plaintiff's motion is GRANTED.

### Factual Background

The following facts appear in the record as undisputed:

On September 14, 2020, Plaintiff filed a verified complaint in the District Court of the Navajo Nation against Mr. Churchill and two corporate entities for which he was the sole member and owner. *See* Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts (Dec. 2, 2025) (hereinafter "DRPSUMF"), ¶¶ 8, 12. The District Court is a duly established trial court operating pursuant to the laws of the Navajo Nation. *Id.* ¶ 4. Plaintiff asserted a claim for forcible entry and detainer pursuant to Navajo Nation Code Ann. tit. 16, § 1801 *et seq.*, alleging that Defendants were willful holdovers, or tenants at sufferance, since they had refused to surrender possession of lands that they had leased from the Navajo Nation—and continued to operate a propane sales business there for many years—despite the termination of the lease in 2010 for material default. *See id.* ¶ 8; Pl.'s Ex. 2 (verified complaint), ¶¶ 8-9, 18-19. Plaintiff's action thus sought to evict Defendants from the premises and recover rents allegedly owed by Defendants under the former lease. *Id.* ¶¶ 8, 10.[1]

---

[1] The lease, made in 1996, included a provision stating that the lessees "'consent to the jurisdiction of the courts of the Navajo Nation.'" Pl.'s Supplemental Statement of Additional Material Facts (Jan. 23, 2026) (quoting lease, Pl.'s Ex. 13 at ¶ 40). (This appears significant because 7 N.N.C. § 253a, the "long-arm" statute of the Navajo Nation,

On October 22, 2020, Mr. Churchill and the two corporate Defendants were personally served with the Plaintiff's complaint and summonses. DRPSUMF ¶¶ 13-14. The summonses indicated that a responsive motion or an answer was due within six days of service. *See* Pl.'s Resp. to Def.'s Statement of Additional Material Facts (Jan. 23, 2026) (hereinafter "PRDSAMF"), ¶ 2. On or about October 29, 2020, the three Defendants, proceeding pro se, filed their answer to the Complaint. DRPSUMF ¶ 16. After Covid-related delays, the District Court set a trial date of January 20, 2023. *Id.* ¶ 16.

On January 20, 2023, just before the trial was to begin, Attorney Edward J. Hermes contacted the District Court to indicate that he had been retained to represent the Defendants and to request a continuance of the trial. *Id.* ¶ 19. The District Court granted a continuance to February 10, 2023, and also re-issued summonses to the Defendants, serving them on Attorney Hermes and also ordering him to enter his appearance for Defendants. *Id.* ¶ 20. Attorney Hermes entered his appearance on January 23, 2023. *Id.* ¶ 22. The bench trial took place on February 10, 2023, and Mr. Churchill and Attorney Hermes were present throughout. *Id.* ¶¶ 27-28.

On May 14, 2024, the Navajo District Court issued a Judgment in the action, and served it on Defendants, through Attorney Hermes. *Id.* ¶¶ 29-30. The Judgment indicated that the Court had subject matter jurisdiction and personal jurisdiction. Pl.'s Ex. 1 (Judgment), at 7. The Judgment also included specific findings of fact and conclusions of law in support of the determination that Defendants had unlawfully held over on Plaintiff's property after the lease had been terminated in 2010 by the U.S. Bureau of Indian Affairs. DRPSUMF ¶ 36; *see* Pl.'s Ex. 1 at 9 ("The Defendants are occupying the Premises without an agreement, lease, or any other permission or consent from the Plaintiff or from the Navajo Nation to occupy the Premises, [and] therefore, the Plaintiff has the right of actual possession to the property, [and] the Defendants are guilty of forcible entry and detainer.").

The District Court ordered that judgment be granted to Plaintiff against Mr. Churchill in the amount of $720,000.00. *Id.* at 10. The two corporate Defendants were ordered "responsible for $133,860.95," with the Judgment indicating that a payment of that amount would subtract from the amount owed by Churchill. *Id.* Defendants were also ordered to vacate the leased premises within 5 days, and the Court indicated that a failure to so vacate would result in issuance of a Warrant of Removal and Writ of Restitution against Defendants. *Id.* Defendants were also apprised of their right to appeal to the Navajo Nation Supreme Court, and that, in order to properly commence the appeal, Defendants had to file a notice of appeal and an appeal bond in the amount of $30,000 (or seek waiver of the bond requirement), within five business days. *Id.* No appeal was taken by any of the Defendants, however. DRPSUMF, ¶ 31.

---

appears to provide that personal jurisdiction may be had over non-Tribal persons or entities who give such consent.) In his Rule 56(c)(2) responsive statement, Defendant properly objected to Plaintiff's quotation of this "consent" statement in the lease, as set forth in Plaintiff's Rule 56(c)(1) Statement, because the Plaintiff had neglected to attach a copy of the lease as an exhibit to its Statement. Plaintiff's "Supplemental Statement" cured this defect. Although a moving party's "supplemental" statement of is not expressly permitted under Rule 56(c), there was no response or further objection by Defendant, so the quotation is properly supported. *Cf. also* V.R.C.P. 56(e)(1) (court may "give the party an opportunity to properly support . . . the fact").

2

On June 10, 2024, Defendant Churchill was removed from the formerly leased premises by a Navajo police officer who was executing the Writs of Restitution and Removal that had been issued by the District Court. PRDSAMF, ¶ 9. As a result, Defendant was unable to account for his personal property located on the premises, and he has not been allowed to re-enter the premises since his removal. *Id.* ¶¶ 9-10.

Plaintiff subsequently obtained $56,256.95 through garnishment of funds located in a New Mexico bank account in the name of Chief Propane & Accessories, one of the two corporate defendants. DRPSUMF, ¶ 37. The garnishment was reported to the Navajo District Court, leaving the remaining judgment amount of $663,743.05. *Id.* ¶ 39.

On or about September 27, 2024, Plaintiff obtained a writ of execution, under which the Navajo Nation police seized personal property of the Defendants, including, *inter alia*, used propane tanks, propane equipment, and vehicles. *Id.* ¶ 41. That seized property remains in the custody of the Navajo District Court (held *in situ*, where it was found on the formerly leased premises), and has not yet been appraised or sold by the Court. *Id.* ¶ 43. Defendant asserts without dispute that the value of the seized property is $1,347,850.00. PRDSAMF, ¶ 14.

Analysis

I. Governing Law

A. Principles Governing Recognition of Tribal Court Judgments

Final judgments of a court or tribunal of another state or jurisdiction are not immediately or automatically enforceable or subject to execution by Vermont courts. *See US Acquisition Prop. XXXVI, LLC v. Shirazipour*, No. 22-5-20 Gicv, 2021 WL 8201983, at *2 (Vt. Super. Ct. Aug. 13, 2021) (Mello, J.); *Restatement (Third) of Foreign Relations Law of the United States* § 481 cmt. b (1987) ("The judgment of a foreign state may not be enforced unless it is entitled to recognition."). Such judgments must instead be "domesticated," that is, they must be recognized and made a Vermont judgment by a Vermont court, in "a new and independent action" brought pursuant to 12 V.S.A. § 506. *See US Acquisition*, 2021 WL 8201983, at *2; 12 V.S.A. § 2681(a) ("The Supreme Court and Superior Courts may issue executions on final judgments *rendered by them* . . . ."); *cf. Blake v. Petrie*, 2020 VT 92, ¶ 19, 213 Vt. 347 ("The terms 'new' and 'independent' [in 12 V.S.A. § 506] must be read together to mean an action separate and apart from the one giving rise to the judgment sought to be renewed [or acted upon].") (alteration added).

When recognition is sought in state court for a judgment rendered by a court of another state, full faith and credit principles necessarily control. *See* U.S. Const. art. IV, § 1. In that context, "'the burden of undermining the decree . . . rests heavily upon the one who assails such decree,'" who must prove that the rendering court "lacked jurisdiction or acted to deprive [the] defendant of a reasonable opportunity to be heard.'" *H & E Equip. Servs., Inc. v. Cassani Elec., Inc.*, 2017 VT 17, ¶¶ 4, 7, 204 Vt. 559 (quoting *Wursthaus, Inc. v. Cerreta*, 149 Vt. 54, 55, 58 (1987)). Indeed, the "jurisdictional inquiry" in that context "is a limited one," since "if the judgment on its face appears to be a record of a court of general jurisdiction, such jurisdiction

3

over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record itself." *V.L. v. E.L.*, 577 U.S. 404, 407 (2016) (omitting quotation marks); *see also Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 (1982) ("state proceedings need do no more than satisfy minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law").

The Vermont Supreme Court has not addressed the standard that governs the decision by a Vermont court whether to recognize a civil money judgment rendered by a court of a federally-recognized Indian Tribe. The parties' contentions in this case indicate that recognition should not be governed by full faith and credit principles, by instead the principles of comity that are forth in the *Restatement (Third) of Foreign Relations Law of the United States* (1987).[2] This is significant, and actually a bit of a concession on the part of Plaintiff, for a couple of related reasons. First, while it is certainly clear that the Full Faith and Credit Clause itself applies only to judgments rendered by sister states (and not tribes), it is apparently a close and "difficult" question whether the federal implementing statue, the Full Faith and Credit Act (28 U.S.C. § 1738), requires state and federal courts to give full faith and credit to tribal court judgments. *See* Conf. of Western Attys. Gen., *2024 American Indian Law Deskbook* § 6:13 (Thomsen Reuters, May 2024 update). Second, "[c]omity is a discretionary act of the [court of recognition] and entails consideration of a broader range of factors than relevant in full faith and credit analysis." *Id.* As courts facing this issue have noted, "[c]omity is the principle that 'the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state or jurisdiction, *not as a matter of obligation*, but out of deference and mutual respect.'" *John v. Baker*, 982 P.2d 738, 762 (Alaska 1999) (emphasis added; quoting *Brown v. Babbitt Ford, Inc.*, 571 P.2d 689, 695 (Ariz. Ct. App. 1977)); *see also Maghu v. Singh*, 2018 VT 2, ¶ 26, 206 Vt. 413 ("[c]omity does not mandate deference to a foreign jurisdiction" and "never requires" a court to give effect to laws of another jurisdiction "which conflict with those of its own state") (omitting quotation marks and citations). In short, if comity principles govern, the foreign court judgment is open to attack on broader grounds than if the full faith and credit mandate had governed. Therefore, Plaintiff has taken a position on a contested legal issue, and that position is generally less favorable to Plaintiff's goal of recognition.

For a handful of reasons, this Court will apply the *Restatement* principles of comity here. While there is a close debate on this issue, the *Restatement* approach has support in decisions by the U.S. Ninth and Tenth Circuit Courts of Appeal—circuits in which many federally-recognized Tribes reside and exercise self-governance, including powers to decide cases. *See United States v. Shavanaux*, 647 F.3d 993, 998-99 (10th Cir. 2011) (relying principally on *Wilson v. Marchington*, 127 F.3d 805, 810 (10th Cir. 1997)). Similarly, courts in Western states, such as Idaho and Alaska, take this same approach. *See John*, 982 P.2d at 763 ("Although Indian tribes, as domestic dependent nations, differ from foreign countries, we agree with the Ninth Circuit that comity affords the best 'analytical framework for recognizing tribal judgments.'") (quoting *Wilson*, 127 F.3d at 810); *Coeur d'Alene Tribe v. Johnson*, 405 P.3d 13, 21 (Idaho 2017); *see also Tracy v. Superior Ct. of Maricopa Cnty.*, 810 P.2d 1030, 1041 (Ariz. 1991) (en banc) (citing several Arizona decisions recognizing Navajo tribal court judgments as a matter of comity);

---

[2] As discussed below, the parties disagree as to the substance or meaning of these principles and how they should be applied here.

*State v. Spotted Eagle*, 2003 MT 172, ¶ 30, 71 P.3d 1239 ("This Court treats tribal court judgments with the same deference as those of foreign sovereigns as a matter of comity").

Moreover, many of the above decisions find at least a rough analogy to exist between tribal court judgments and judgments rendered by courts of foreign nation-states, on the reasoning that federally-recognized Tribes are understood to have retained their inherent sovereignty and rights to self-governance in many respects. If that analogy holds, then decisions by the Vermont Supreme Court concerning recognition of foreign nation-state judgments support the conclusion that the comity principles set forth in the *Restatement* should govern in the instant case. *See Office of Child Support v. Sholan*, 172 Vt. 619, 621-22 (2001) (mem.) (affirming family court's application of *Restatement* principles of comity in recognizing and enforcing support order entered by court of Federal Republic of Germany); *Adams v. Adams*, 2005 VT 4, ¶¶ 13-14, 177 Vt. 448 (affirming family court's application of *Restatement* principles in declining to recognize Honduran divorce decree).

Lastly, as noted above, Plaintiff has advocated for this approach, even though it affords the court of recognition (this Court) greater discretion and grounds to decline to grant recognition. And while Defendant disagrees with Plaintiff as to the meaning and proper application of the *Restatement*, he does not argue that any different standards should govern the question of recognition.

The *Restatement* begins with a general rule or presumption that favors granting recognition: "Except as provided in § 482, a final judgment of a court of a foreign state granting or denying recovery of a sum of money, . . . is conclusive between the parties, and is entitled to recognition in courts in the United States." *Restatement (Third) of Foreign Relations Law of the United States* § 481(1). The next section of the *Restatement* then identifies two defenses that *mandate* non-recognition of the judgment if either defense has been established by the defendant, as follows:

    a.    the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with due process of law; or

    b.    the court that rendered the judgment did not have jurisdiction over the defendant in accordance with the law of the rendering state and with the rules set forth in § 421.

*Restatement (Third) of Foreign Relations Law of the United States* § 482(1). If those defenses are not established, the *Restatement* then lists a handful of additional factors that the court of recognition *may* rely upon, as a matter of discretion, to decline to grant recognition:

  a.  the court that rendered the judgment did not have jurisdiction of the subject matter of the action;

  b.  the defendant did not receive notice of the proceedings in sufficient time to enable him to defend;

c. the judgment was obtained by fraud;

d. the cause of action on which the judgment was based, or the judgment itself, is repugnant to the public policy of the United States or the State where recognition is sought;

e. the judgment conflicts with another final judgment that is entitled to recognition; or

f. the proceeding in the foreign court was contrary to an agreement between the parties to submit the controversy on which the judgment is based to another forum.

*Id.* § 482(2). Otherwise, the presumption identified in Section 481(1) controls, and the court should grant recognition of the foreign judgment.

B. Standard of Review

A motion for a summary judgment is governed by Rule 56 of the Vermont Rules of Civil Procedure, which provides that such a judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). Here, while the defenses set forth in Section 482 of the *Restatement* ultimately must be established by Defendant Churchill, Plaintiff as movant must show that the presumption under Section 481 is warranted by facts not in genuine dispute, and further, that there is no genuine fact issue as to any of the Section 482 defenses. Further, Plaintiff must show that on the undisputed record, it is entitled to judgment as a matter of law. *See H & E Equip. Servs.*, 2017 VT 17, ¶ 19 (although party attacking foreign state court judgment has burden of undermining its presumptive validity, movant for summary judgment must still establish absence of genuine issue of material fact and entitlement to prevail as a matter of law) (citing *Lakeside Equip. Corp. v. Town of Chester*, 173 Vt. 317, 322 (2002)).

II. Application of Law

A. The Final Judgment Requirement

Viewing the undisputed record in the light most favorable to Defendant reveals that the judgment at issue is a "final judgment" as required under Section 481(1) of the *Restatement*, and thus entitled to the general presumption of recognition. The Navajo District Court's Judgment of May 2024 was a final judgment because it resolved all the issues in the case following a trial on the merits, and it "is not subject to additional proceedings in the rendering court other than execution." *Restatement* § 481, cmt. e; *accord Catlin v. United States*, 324 U.S. 229, 233 (1945); *Litzin v. Farmington Motors, Inc.*, 2 Am. Tribal Law 453, 455, 7 Navajo Rptr. 396 (Navajo 1999) (a final judgment "disposes of the case" and "'results after all the substantial rights of the parties have been litigated and decided on the merits by the district court'") (quoting *Billie v.*

*Abbott*, 5 Navajo Rptr. 201, 203 (1987)). Indeed, pursuant to Navajo statutory law, where (as here) a trial court orders money damages to be paid to an injured party, that is conclusive proof "that the substantial rights of the parties were decided on the merits . . . . [and that] the District Court has disposed of the case and reached a final judgment." *Litzin*, 2 Am. Tribal Law at 455 (citing 7 N.N.C. § 701).[3] Further, that the Judgment was not labeled "Final Judgment" does not matter. *See id.* (document entitled "Findings of Fact and Conclusions of Law" is final judgment because "it is the substance, not the title of the document which determines whether a final judgment has been made") (citing 46 *Am.Jur Judgments* § 83 (1994)).

This Court does not agree with Defendant's assertion that the Navajo District Court still "retains jurisdiction," such that this Court should decline recognition out of comity and respect to an ongoing, active litigation in another jurisdiction concerning the same parties and the same subject matter. *See* Def.'s Mem. of Law In Opp'n to Pl.'s Mot. For Summ. J. (Dec. 2, 2025), at 6-7 (citing *Nijensohn v. Ring*, 2022 VT 16, ¶ 16, 216 Vt. 329, and the *Restatement (Second) of Conflict of Laws* § 86 cmt. b). Plaintiff's lawsuit against Mr. Churchill and his companies, for forcible entry and detainer, is no longer subject to litigation. There is no further relief that may be had by the parties on the merits of that action. Relatedly, the retention of mere *enforcement* jurisdiction by a court does not make its prior final judgment non-final, or subject to further litigation on its merits. Enforcement jurisdiction is an inherent, ancillary power that courts recognize on the theory that they must have sufficient power to enable them to enforce what they previously ordered. *See Blake*, 2020 VT 92, ¶ 12; *Fafel v. Dipaola*, 399 F.3d 403, 411 (1st Cir. 2005). As a "judicial creation, born of the necessity that courts have the power to enforce their judgments," enforcement jurisdiction "extends only so far as required to effectuate a judgment." *Fafel*, 399 F.3d at 411. Accordingly, such jurisdiction not in the nature of ongoing jurisdiction as to the merits of any claim or case and provides no basis for this Court to stay its hand, dismiss this action, or decline recognition.

*Nijensohn v. Ring*, an action arising out of a divorce proceeding in Massachusetts, is readily distinguishable. There, the Massachusetts trial court issued a divorce decree nisi ordering the sale of the parties' second home in Vermont by a special master. The plaintiff-husband timely appealed the decree in Massachusetts and then later challenged it through a civil action in Vermont. The latter was dismissed by Judge Teachout as a matter of comity, but *not* because the Massachusetts trial court had yet to enter a final divorce decree, but because plaintiff-husband's appeal of that final decree "remain[ed] pending in Massachusetts." 2022 VT 16, ¶ 16. The Vermont Supreme Court upheld the dismissal as a permissible exercise of discretion because it would "give the Massachusetts courts the first opportunity to pass upon the matter," and thereby "avoid[] multiple or inconsistent judgments that could result from both Vermont and Massachusetts courts adjudicating th[e same] claim." 2022 VT 16, ¶ 16 (alteration added; quotation marks omitted). That approach and result does not offend the *Restatement (Third) of Foreign Relations Law of the United States*. *See Restatement* § 481 cmt. e ("A final judgment may be the basis for an action for its enforcement and for attachment of property of the judgment debtor *even while an appeal is pending*, but courts in which enforcement is sought in these

---

[3] By the same statute and logic, that the Navajo Judgment ordered Defendants to vacate and surrender possession of the premises to the Plaintiff is also proof the Judgment was a final judgment. The statute provides that in "all civil cases, judgment shall consist of an order of the court awarding money damages to be paid to the injured party, *or directing the surrender of certain property to the injured party*[.]" 7 N.N.C. § 701 (emphasis added).

7

circumstances often stay their proceedings until the appeal has run its course.") (emphasis added). Here, of course, Defendants took no appeal to the Navajo Supreme Court, which makes *Nijensohn* all the more distinguishable.

B. Defenses Under *Restatement* Section 482

Turning to the defenses or grounds for non-recognition under Section 482 of the *Restatement*, this Court has identified two that Defendant has asserted: (1) the Navajo District Court's Judgment "was rendered under a judicial system that does not provide . . . procedures compatible with due process of law"; and (2) the Judgment is "repugnant" to the laws and/or or public policies of the State of Vermont. The first defense would mandate non-recognition, and the second is a permissible ground on which to decline to recognize. The Court addresses these in turn.

1. Fair Procedures

With regard to the claim of a lack of fair procedures, the *Restatement* indicates that the court of recognition "must satisfy itself of the essential fairness of the judicial system under which the judgment was rendered," and that the court "may make this determination without formal proof or argument, on the basis of general knowledge and judicial notice." On this issue, Plaintiff offers the views of the Arizona Supreme Court, in *Tracy*, as follows:

> The courts of the Navajo judicial branch are courts of record with rights of appeal to the Navajo Supreme Court, which hears issues of law raised in the lower court record. The Navajo Nation has developed an extensive tribal code that is bound and supplemented. Procedural rules of court are patterned after the federal rules. Decisions of the Navajo Supreme Court are published in the Navajo Reporter, and the Navajo courts use these as precedent. Federal and state opinions serve as persuasive authority.

810 P.2d at 1036 n.7. These statements about the Navajo judicial system are uncontested by Defendant.

In addition, Plaintiff identifies, through facts supported by undisputed, admissible evidence, that in the case for forcible entry and detainer in the Navajo District Court, Defendant was actually afforded the essential elements of fair procedure. For example, Defendant received personal service of the complaint and summons; Defendant was permitted an answer; Defendant was granted a last-minute continuance of the trial, to allow his newly-retained attorney to participate; Defendant his attorney attended the full trial; Defendant was served with the District Court's final judgment, which included specific findings of fact and conclusions of law supporting the Court's determinations as to liability and the relief granted to the Plaintiff;[4] Defendant was notified of his right to appeal and the procedures by which to appeal.

---

[4] The Judgment also included the Court's recognition that it had personal and subject matter jurisdiction. If there were any doubt, Plaintiff has provided undisputed evidence that Defendant expressly consented to the jurisdiction of the Navajo Court, both in the underlying lease and by way of answering the complaint and entering an appearance.

8

These are the very hallmarks of fair procedure in a civil action. The U.S. Supreme Court identified the essential elements of fair procedure as follows:

> [W]here there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting a trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in the procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect.

*Hilton v. Guyot*, 159 U.S. 113, 202 (1895); *see also Restatement* § 482 cmt. b (quoting this portion of *Hilton* as an indication of the "essential elements of fair procedure").

Defendant does not dispute Plaintiff's evidence as to fair procedures. Defendant argues that the Navajo procedures were deficient because in certain respects they "violated Vermont due process." For example, Defendant was afforded only six days in which to respond to Plaintiff's complaint (as compared to 21 days under V.R.C.P. 12(a)); the Navajo District Court delayed its Judgment for fourteen months after the bench trial (in violation of duties of diligence imposed on Vermont courts by Rule 2.5 of Vermont's Code of Judicial Conduct), and Defendant was given only five days to notice an appeal and post a $30,000 bond (in contrast to 30 days afforded to civil litigants in Vermont courts). These arguments are unavailing. While Vermont's Rules of Civil Procedure are certainly designed to afford litigants their rights to due process under the Fourteenth Amendment, our Rules do not set the "floor," such that procedural rules that do not mirror ours are lacking in essential fairness. *Cf. Spotted Eagle*, *supra*, ¶ 31 (rejecting similar reasoning because "it would suggest that Montana recognizes the legitimacy of judgments of the tribal courts to the extent the procedures mirror Montana procedure").

Further, the record shows that, in separate legal proceedings in Navajo District Court, that began in 2016 and ended in 2019, well prior to the complaint for forcible entry and detainer, Defendant was afforded notice and an opportunity to respond to a complaint for trespass brought by Kayenta Township. *See* Pl.'s Ex. 1 (Judgment), at 2-3. Indeed, in a final judgment in that action, Defendant was given notice that he was liable for trespass and was ordered to vacate and surrender possession by December 12, 2019. *Id.* at 3. Defendant refused. That refusal was one of many refusals to vacate the formerly leased premises, following several notices by federal and tribal authorities (beginning in 2010) requesting or ordering Defendant to vacate. *Id.* at 2-3.

Moreover, as to the six-day deadline to respond to the complaint for forcible entry and detainer, the record shows that Defendant filed an answer *seven* days after he was served with the summons and complaint, and the District Court did not refuse that answer as untimely. Indeed, after Defendant retained legal representation, he was granted a last-minute request for a continuance of the trial and was further afforded a second opportunity to file a response to the complaint, over the objection by Plaintiff. *See id.* at 1 (indicating

that Court allowed a second Answer, filed on February 3, 2023, over Plaintiff's motion to strike, under the principle that both parties must be given "an opportunity to have their say").

With regard to the lack of judicial diligence, Defendant identifies no prejudice or fundamental deprivations to his rights, arising from the fourteen months it took for the Navajo Court to issue its final judgment. Further, Defendant does not article why or how a code of judicial conduct in Vermont or elsewhere creates or affords any enforceable procedural rights for litigants.

Lastly, with respect to the five-day appeal and bond deadline, Plaintiff has shown that this deadline is for expedited special eviction actions and directly borrowed or derived from the State of Arizona's forcible entry and detainer statute. *See* Pl.'s Reply Mem. (Jan. 23, 2026), at 5 n.7 (citing Ariz. Rev. Stat. Ann. § 12-1178(c), allowing five days to post an appeal bond in such special eviction cases). The deadline also substantially aligns with deadlines for appeal bonds under similar causes of action in several other states, including Maine (seven days to post bond to appeal), Washington (three days), and Maryland (seven days), among others.

### 2. Conflict With Vermont Law

Defendant has not shown that the Judgment conflicts with the laws or policies of Vermont. Defendant must show that the Judgment would effectuate a legal policy that is repugnant to Vermont's policies, such as in *Maghu*. *See* 2018 VT 2, ¶ 26 (declining to grant wife's motion to dismiss husband's no-fault petition for divorce filed in Vermont, since wife's motion was predicated policies of the nation of India, where the parties had married, which do not allow no-fault divorces). Defendant has not made this showing. Indeed, the action under Navajo statute, for forcible entry and detainer, sounds akin to a Vermont action for "justice ejectment," which lies against a tenant by sufferance or holdover who refuses to vacate after the termination of a lease agreement. As such, recognizing the Navajo Judgment would not have the effect of allowing a judgment to be enforced in Vermont that is repugnant to our laws.

Defendant identifies the post-judgment eviction and the seizure of his personal property (or corporate property) by the Navajo authorities. He asserts that to allow the Judgment to be executed here in Vermont, despite the fact that Plaintiffs are in possession of Defendant's property valued in an amount exceeding the Judgment, would offend Vermont's laws and policies respecting and protecting private property rights. By its very terms, that argument is challenging the execution of the Judgment, not whether it is due recognition. This case is for recognition of the Judgment as a Vermont judgment, the predicate and analytically distinct step, before execution. *Cf. US Acquisition*, 2021 WL 8201983, at *2 (indicating that "the full scope of this case" is recognition and domestication of a sister state judgment, and not whether the Vermont court has personal jurisdiction over the defendant sufficient to issue execution on the judgment).

Moreover, our statute on executions of judgments, 12 V.S.A. § 2681(a), states that "[s]uch executions may be issued so long as the judgment remains unsatisfied[.]" This is

pertinent since the mere seizure or levy of property does not satisfy a judgment, even if the appraised or supposed value of the property exceeds the value of the judgment. That is because a levy or seizure does not divest the judgment debtor of his interest in the property and does not ensure that the judgment creditor will be paid from any fruit of the levy. *See Simmons v. Simmons*, 514 A.2d 128, 131-32 (Pa. Super. Ct. 1986) (citing several Pennsylvania Supreme Court decisions).

In short, Defendant's argument with regard to the post-judgment eviction and the seizure of his personal property by the Navajo authorities is not a basis for declining recognition.

Accordingly, the Judgment of the Navajo District Court is entitled to recognition.

## **ORDER**

Wherefor, Plaintiff's motion for summary judgment is GRANTED. Counsel for Kayenta Township Commission shall submit a form of judgment. V.R.C.P. 58(d).

Electronically Signed on: Friday, March 20, 2026 pursuant to V.R.E.F. 9(d).

_____
Susan A. McManus
Superior Court Judge